William C. CAMERON, Plaintiff-Appellee,

v.

John C. BROCK et al., Defendants-Appellants.

Nos. 72–1563, 1564.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 7, 1972.

Decided Feb. 13, 1973.

John F. Dugger, Morristown, Tenn., for defendants-appellants, John C. Brock, Richard Baxter & Johnny French.

Erma G. Greenwood, Knoxville Tenn., for defendant-appellant, Queen Ins. Co. of America; Kramer, Dye, Greenwood, Johnson, Rayson & McVeigh, Knoxville, Tenn., and Nat R. Coleman, Jr., of Milligan, Silvers, Coleman, Fletcher & Gaby, Greeneville, Tenn., on brief.

Philip P. Durand, Knoxville, Tenn., for plaintiff-appellee, William C. Cameron.

Before PHILLIPS, Chief Judge, and CELEBREZZE and KENT, Circuit Judges.

PHILLIPS, Chief Judge.

The appellants, the sheriff of Hamblen County, his bonding company and two deputies, appeal a civil judgment obtained by jury verdict under 42 U.S.C. §§ 1983, 1985(3).

The case arises from a heated 1970 campaign for sheriff in an East Tennessee County, in which the defendant-appellant sheriff was challenged for re-election. The appellee was an active supporter of the incumbent's opponent.

On the night before the election, at about 6 p. m., Sheriff Brock had a meeting with his supporters in Morristown to discuss a strongly worded pamphlet being distributed by his opposition which alleged certain improprieties on the part of the sheriff during his tenure in office. Later that evening, about 9:30, the sheriff, after being informed of the presence of some of the pamphlets in a truck in a local garage, went to the garage and threatened the owner of the truck. When the owner of the truck objected to the abuse, the sheriff reportedly placed his hand on his gun and said: "Come on." In the sheriff's presence, and apparently at his direction, the pamphlets were destroyed. Deputy Johnny French accompanied the sheriff at the garage and stated that "somebody is going to get in trouble over these" and that "this is going too damn far."

About 10 p. m., the appellee, who was distributing the pamphlets on Main Street in Morristown, was arrested. The exact circumstances surrounding the arrest are disputed. It appears that the appellee was arrested by Deputy Richard Baxter and taken to the local jail. Baxter claims that he was told by some eyewitnesses that the appellee had entered an automobile and that the owner of the automobile reported his wallet missing. The appellee asserts the only information given the deputy by the passersby, who were supporters of the sheriff, was that "he's right over there." The deputy had no warrant for the appellee's arrest and did not examine or search the car in question. During the trip to the jail, according to the appellee, the deputy radioed the sheriff and stated that "I have one of them." The sheriff responded "Take him to jail. I will be there."

At the jail, a warrant was issued for breaking and entering the car on Main Street. It should be noted that the warrant was first issued on a charge of littering. This was changed later to breach of the peace and then later changed again to breaking and entering. Appellee remained in jail until 1 a. m. when bond was posted. At a preliminary hearing later, the Judge of the general sessions court who issued the warrant dismissed the charge when one of the eyewitnesses, the owner of the car, conceded that he had not seen the appellee enter the car after all.

After a jury trial in this action, the appellee was awarded a $15,000 judgment. The appellants appeal. The basic claim of the officials is that there was not sufficient evidence introduced to support a suit under § 1985(3) and that the district judge's charge to the jury was improper. The bonding company, while reiterating the other appellants' claim on the merits of the suit, additionally asserts that even if the sheriff is individually liable to the appellee here, the bonding company is not liable because the acts complained of were committed by the deputies under mere color of law and not by virtue of office and that, under Tennessee law, it is not liable in such case.

The most recent authoritative explication of the requirements of a § 1985(3) suit was set out by the Supreme Court in Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). That decision, which made private conspiracies actionable under § 1985(3) for the first time, stated that the complaint must allege the conspiracy's existence, its purpose to deprive a person or class of persons of equal protection of the laws, an act in furtherance of the conspiracy and injury or deprivation of the rights of the plaintiff.

The Court held that the conspiracy's intent to deprive a person or class of persons of their rights must be invidiously discriminatory. The Court expressly declined to rule on whether non-racial discrimination might be such invidious discrimination.[1] In an earlier decision, however, the Court at least implied that class-based non-racial discrimination would be actionable. Snowden v. Hughes, 321 U.S. 1, 11, 64 S.Ct. 397, 88 L.Ed. 497 (1944). It should also be noted that the words of the statute itself make no reference to a requirement of racial discrimination.

This court recently found sufficient an allegation under § 1985(3) that a single family was deprived of the equal protection of the law. Azar v. Conley, 456 F.2d 1382 (6 Cir. 1972). No racial discrimination was involved in the Azar case. See also Harrison v. Brooks, 446 F.2d 404, 407 (1st Cir. 1971).

■ We hold that § 1985(3)'s protection reaches clearly defined classes, such as supporters of a political candidate. If a plaintiff can show that he was denied the protection of the law because of the class of which he was a member, he has an actionable claim under § 1985(3).

This interpretation does not transform the statute into the "general federal tort law" feared by the Griffin Court and gives full effect to the Congressional purpose in enacting the statute.

■ In the instant case, the jury, in returning the general verdict in favor of the appellee, chose to believe his testimony and disbelieve the claims of the appellants that there was probable cause to arrest the appellee. The jury chose to believe that these appellants conspired to deprive the appellee, and other supporters of the sheriff's opponent, of the protection of the First Amendment in distributing campaign material. The appellants carried out this conspiracy by harassing the appellee, having him arrested and incarcerated. These conclusions are supported by the record. The appellants conspired to deprive the appellee of his rights and the purpose of the deprivation was to halt or discourage anti-Brock activity on the part of the challenger's supporters. The elements of a § 1985(3) suit were present and the jury had sufficient evidence before it to find for the appellee, as it did.

■ The appellants also claim that the charge to the jury was improper in that it did not require that the jury find a specific intent on the part of the defendants to deprive the appellee of the equal protection of the laws. As the Griffin Court stated: "The motivation aspect of § 1985(3) focuses not on scienter in relation to deprivation of rights but on invidiously discriminatory animus." 403 U.S. at 102, n. 10, 91 S.Ct. at 1798. It is sufficient to show that these appellants were acting intentionally because of the appellee's activity on behalf of the sheriff's opponent. Taken as a whole, we find that the instruction of

1. Writing for the Court, Mr. Justice Stewart stated:

"The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.[9]

"9. We need not decide, given the facts of this case, whether a conspiracy motivated by invidiously discriminatory intent other than racial bias would be actionable under the portion of § 1985(3) before us. Cf. Cong. Globe, 42d Cong., 1st Sess., 567 (1871) (remarks of Sen. Edmunds)." 403 U.S. at 102, 91 S.Ct. at 1798.

the District Judge was proper. *See* Azar v. Conley, *supra.*

The question of the bonding company's liability is an issue of State law. Waters v. McClary, 344 F.2d 75, 76 (6th Cir. 1965). Under Tennessee law, the sheriff is required to post a bond covering his conduct in office. T.C.A. § 8–803. The sheriff's bonding company executed this statutory bond whose provisions are outlined at T.C.A. § 8–1920. According to the statute, this bond is "for the use and benefit of every person who is injured, . . . by any wrongful act committed under color of his office . . . or the improper or neglectful performance of the duties imposed by law."

On appeal the bonding company asserts that, according to Tennessee law, the company that makes the sheriff's bond is not liable to persons injured by the sheriff's deputies when they are acting not by virtue of their office, but merely under color of office. The bondsman relies on the Tennessee case of Ivy v. Osborne, 152 Tenn. 470, 279 S.W. 384 (1925). The Tennessee courts have long grappled with the distinction. Its essence is that acts done by virtue of office are those done while serving a valid warrant or acting on a crime committed in the officer's presence, while acts done under color of office are acts done as an official which are totally unauthorized. *See* State v. National Surety Co., 162 Tenn. 547, 39 S.W.2d 581 (1931).

The appellee contends that, under State v. Dunn, 39 Tenn.App. 190, 282 S. W.2d 203 (1943), the distinction between acts done under color of office and by virtue of office has been abolished. This is an accurate statement of the law where the sheriff's acts are involved because the statutory bond required of the sheriff must cover him for acts done under color of office as well as

by virtue of office. In fact, since the statute has been in effect in Tennessee since 1858, *see Waters, supra,* 344 F.2d at 77, it is problematical whether the distinction ever existed in regard to the sheriff's own behavior.

It should be noted that this court, in an opinion written by this author, has stated broadly the abolition of the distinction in Tennessee. *Waters, supra,* 344 F.2d at 78. It should be pointed out that the *Dunn* case, on which this court relied in *Waters,* was one in which the conduct of the constable himself was involved. In the *Waters* case, there was a deputy involved but his conduct was neither by virtue of office or under color of office; he was driving a car negligently. Thus, neither the *Waters* nor *Dunn* case should be viewed as abolishing the distinction when the conduct of deputies is at issue. It may very well be, despite some broad language in *Waters,* that the distinction between acts taken under color of office and by virtue of office remains controlling in the situation when the sheriff's bondsman is sued for the acts of the deputies. We need not and do not decide this question, however, because of the facts of this case.

The bonding company seems to assume that its only liability in this case was the result of the arrest of the plaintiff by deputy Baxter. This is not the situation. The jury found that Sheriff Brock participated in a conspiracy to deprive the appellee of the equal protection of the law. He did these acts in his role as the sheriff and thus his statutory bond, covering his acts both by virtue of office and under color of office, renders his bonding company liable to the appellee who was damaged by the acts of the sheriff.

We affirm the judgment against the officials under § 1985(3) and hold that the bonding company is liable to the appellee under the sheriff's statutory bond.