**Harley J. COON, Plaintiff,**
v.
**Robert FROEHLICH, et al., Defendants.**
**No. C–3–81–337.**
United States District Court,
S.D. Ohio, W.D.
Jan. 25, 1983.

Konrad Kuczak, Dayton, Ohio, for plaintiff.

Brian D. Weaver, Dayton, Ohio, for defendants.

## DECISION AND ENTRY OVERRULING DEFENDANTS' MOTION TO DISMISS; CONFERENCE CALL SET

RICE, District Judge.

This action involves an alleged infringement of Plaintiff Coon's First Amendment rights by a variety of Defendants. In an earlier entry (doc. # 16), this Court sustained Defendants' motion to dismiss Plaintiff's amended complaint, and granted him 20 days to file a second amended complaint. Plaintiff filed such a complaint in a timely manner, and Defendants renewed (doc. # 18) their motion to dismiss. For the reasons set out below, said motion is overruled.

## I. FACTUAL ALLEGATIONS

In his second amended complaint (docs. # 17 and 20), Plaintiff initially alleges that he resides in the City of Beavercreek, Ohio, that Defendants Robert Froehlich and Joe Fodal were, respectively, Acting City Manager and Prosecutor of Beavercreek, who acted under the color of the laws of Ohio, and that Defendants Sharon Buck, Shirley Kaminski, Rita Gordon, Joy M. Brailey, Thomas F. Daniels and Kevin C. McGrath are "natural persons" and residents of the state of Ohio. Second Amended Complaint, ¶¶ 2–5. The cause of action is alleged to arise under 42 U.S.C. §§ 1983 & 1985, and the jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343. ¶ 1.

Two Counts are then set out. In Count One, Plaintiff alleges that "he was a member of a class of persons who held a common political philosophy with respect to a proposed municipal charter which was the subject of an election" in Beavercreek on June 2, 1981. ¶ 6. He further alleges that he and other members of said class formed a committee, known as "Citizens for a Better Charter," "to further the political philosophy of said class by dissemination of literature, the erection of signs and the general conduct of a campaign to defeat the proposed municipal charter at the June 2, 1981 election." ¶ 7. In furtherance of those goals, Plaintiff alleges, he procured 300 placards, at a cost of $154.49, reading "Vote No Charter," and personally posted them in Beavercreek on the day before the election. ¶¶ 9–11. Finally, Plaintiff alleges that, in violation of § 1985(3), Defendants "conspired to deprive the Plaintiff of his privileges and his immunities under the laws of the United States including the U.S. Constitution and the guarantee of free speech by removing such placards from the public view." ¶ 12.

In Count Two, after reiterating the previous allegations, Plaintiff further alleges that Defendants Froehlich and Fodal, acting under color of their offices, "caused the placards ... to be removed from public view either personally or through their agents [naming the other defendants] in violation of the Plaintiff's right to free speech as is guaranteed by the United States Constitution, First Amendment in violation of 42 U.S.C. § 1983." ¶ 18. Relief is sought in the form of compensatory and punitive damages.

## II. DEFENDANTS' MOTION TO DISMISS IS OVERRULED

All the named Defendants have joined in a motion to dismiss the second amended complaint, pursuant to Fed.R.Civ.P. 12(b)(6). In a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded allegations in the complaint, *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976), and such a motion should not be sustained un-

less it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Neil v. Bergland,* 646 F.2d 1178, 1184 (6th Cir.1981), *cert. granted on other grounds,* —— U.S. ——, 102 S.Ct. 2267, 73 L.Ed.2d 1282 (1982). With these standards in mind, the Court turns toward the grounds advanced in support of said motion.

The Court will address the sufficiency of Counts One and Two in reverse order, since § 1985(3), the basis of Count One, "merely provides a remedy for violation of the rights it designates." *Great American Federal Savings & Loan Assn. v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979). Unless a First Amendment violation, set out in Count Two, is cognizable, the Court need not further address the question of whether § 1985 claim is viable. The Court notes that one prerequisite for a lawsuit seeking relief under § 1983 for an invasion of First Amendment rights (i.e., Count Two)—the existence of "state action" or acts performed "under color of state law"—is *not* required in a § 1985(3) suit. *Taylor v. Brighton Corp.,* 616 F.2d 256, 264 (6th Cir.1980). Nevertheless, the Court will first address Count Two, to determine if the general allegations of an invasion of First Amendment rights is sufficiently pleaded. In any event, as discussed below, the Court finds that Plaintiff has sufficiently alleged the exercise of "state action" by two of the Defendants.

### A. VIOLATION OF FIRST AMENDMENT RIGHTS—SECTION 1983

Defendants raise a number of objections to the Second Count; including that it is not pleaded with requisite specificity, that Defendants Froehlich and Fodal are not alleged to have "[done] anything to this Plaintiff whatsoever," and that a mere allegation of "agency" is insufficient to hold the other Defendants liable.

These objections are not well taken. First, the Second Count amounts to more than mere conclusory allegations, *Place v. Shepherd,* 446 F.2d 1239, 1244 (6th Cir. 1971), and if the facts alleged therein are

taken as true, they could serve as a predicate for a violation of the First Amendment rights of political expression of the Plaintiff. *See, e.g., Cameron v. Brock,* 473 F.2d 608 (6th Cir.1973) (§ 1983 action upheld based on sheriff's destruction of political pamphlets).

Second, Defendants Froehlich and Fodal are alleged to have "done something" to the Plaintiff, in that they alleged to have "personally" removed the placards, or "caused" the removal of same through agents. A related and more difficult question, raised in Defendants' previous motion to dismiss (doc. # 4, p. 2), is whether Defendants Froehlich and Fodal took "state action" against Plaintiff, for purposes of the Fourteenth Amendment, or were acting "under color of any statute, ordinance, regulation, custom, or usage" of the state, for purposes of § 1983. In a § 1983 action against state officials, such as Froehlich or Fodal, these requirements are identical and merge into one. *Lugar v. Edmondson Oil Co.,* —— U.S. ——, ——, 102 S.Ct. 2744, 2750, 73 L.Ed.2d 482 (1982). In this case, Froehlich and Fodal are alleged to have acted under color of their offices and of the laws of Ohio. In other words, they are not alleged to have acted in their personal capacities, although Defendants, apparently, believe that the allegations do not sufficiently plead otherwise. The Court finds that the allegations with regard to "state action" are sufficient to survive a motion to dismiss, *cf. Place v. Shepherd, supra,* 446 F.2d at 1245, even if it is not possible to hold at this time, *as a matter of law,* that Froehlich and Fodal acted under color of state law. If there remain "unanswered questions of fact regarding the proper characterization of [their] actions," same may be addressed in a summary judgment motion or by the finder of fact at trial. *Layne v. Sampley,* 627 F.2d 12, 13 (6th Cir.1980). *See also, Stengel v. Belcher,* 522 F.2d 438, 441 (6th Cir.1975), *cert. dismissed,* 429 U.S. 118, 97 S.Ct. 514, 50 L.Ed.2d 269 (1976).

Finally, the six Defendants, who are not alleged to have acted under color of state law, may nevertheless be held liable under § 1983 if they "jointly participated" in the actions of state officials, *Lugar v. Edmondson Oil Co. supra,* 102 S.Ct. at 2751; *Martin-Marietta Corp. v. Bendix Corp.,* 690 F.2d 558, 562–63 (6th Cir.1982); *Macko v. Bryon,* 641 F.2d 447, 450 (6th Cir.1981) (per curiam), or if the state officials "sufficiently encouraged" their actions. *Rendell-Baker v. Kohn,* —— U.S. ——, ——, 102 S.Ct. 2764, 2771, 73 L.Ed.2d 418 (1982). In this action, the six Defendants are not only alleged to be the "agents" of Froehlich and Fodal, but are alleged to have "jointly, severally, or in the alternative, conspired" to violate Plaintiff's First Amendment rights. ¶¶ 18, 12. These allegations, suggesting that the six Defendants "jointly participated" with or were encouraged by Froehlich and Fodal, are also sufficient to survive a motion to dismiss.

For these reasons, Defendants' motion to dismiss Count Two of the second amended complaint must be, and hereby is, overruled.

### B. CONSPIRACY UNDER § 1985(3)

■ Section 1985(3) makes it a federal tort for a private group to "conspire or go in disguise on the highway or on the premises of another for the purpose of depriving ... any ... class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." In *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court held that to state a cause of action under § 1985(3),

> a complaint must allege that the defendants did (1) "conspire or go in disguise on the highway or on the premises of another" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any

right or privilege of a citizen of the United States."

*Id.* at 102–03, 91 S.Ct. at 1798.

There is no question that Plaintiff has sufficiently pleaded the first, second, and fourth requirements. Defendants contend that Plaintiff has not adequately alleged the second requirement, which the *Griffin* Court described as follows:

The language requiring intent to deprive of *equal,* or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.

*Id.* at 102, 91 S.Ct. at 1798 (emphasis in original, footnote omitted).

While the issue is not entirely clear-cut, the Court holds that Plaintiff has adequately alleged the second requirement. As previously noted, Plaintiff alleges in the first Count that by removing the placards, Defendants "conspired to deprive the Plaintiff" of his First Amendment rights. Liberally construing this language, as the Court must, it appears that while Plaintiff does not use the word "intent" or any synonym thereof, Plaintiff impliedly alleges that the Defendants possessed an unlawful animus, since they "conspired *to* deprive" the class to which Plaintiff belonged of First Amendment rights.

In a similar vein, Defendants argue that Plaintiff is simply not a member of a class of which the drafters of § 1985(3) meant to protect. Plaintiff alleges that the class (apparently, at least several in number, ¶ 8) * formed a political committee to oppose the passage of a charter for the City of Beavercreek. He further alleges that he posted the placards in furtherance of the goals of the group. Thus, in allegedly removing the

placards, Defendants were invading the rights of both Plaintiff and the "class" to which he belonged.

The Sixth Circuit has held that similar classes can fall under the protection of § 1985(3). *See Glasson v. City of Louisville,* 518 F.2d 899, 912 (6th Cir.), *cert. denied,* 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975) (class of persons displaying posters or signs critical of President Nixon); *Cameron v. Brock, supra* (class of supporters of a local candidate for office who sought to disseminate political literature). In discussing the views of Senator Edmunds, one of the drafters of § 1985(3), the Sixth Circuit recently stated that in *Cameron* and *Glasson,*

tortfeasors discriminate against their victims precisely because of the distinct manner in which the latter exercise their fundamental rights.

Discriminating only against Democrats (an example given by Senator Edmunds) anti-Nixon demonstrators (*Glasson*) or particular local candidates (*Cameron*), deprives these groups of the peculiar manner in which they exercise their "fundamental right" of free speech.

*Browder v. Tipton,* 630 F.2d 1149, 1155 (6th Cir.1980). *See also Scott v. Moore,* 680 F.2d 979, 991 (5th Cir.) (en banc), *cert. granted,* —— U.S. ——, 103 S.Ct. 442, 74 L.Ed.2d 599 (1982).

To be sure, Plaintiff does not allege that Defendants discriminated in the sense that the placards (if any) of charter supporters were left standing, while the placards of charter opponents were taken down. This was apparently the situation in *Glasson, supra,* where defendants therein discriminated between persons displaying signs supporting or opposing the President. 518 F.2d at 912. But such discrimination is not required to be alleged; it is enough that

---

* Specifically, Plaintiff alleges that the class "consisted of least himself, the members of the 'Citizens for a Better Charter' committee and 2310 like-minded electors who cast ballots against the proposed municipal charter in Beavercreek, Ohio, on June 2, 1981." ¶ 8. The size of the committee is not stated. No difficulty is presented, even if the size of the committee is small in number. *See, e.g., Azar v. Conley,* 456 F.2d 1382 (6th Cir.1972) (8-member

class recognized in § 1985(3) suit). However, the inclusion of the 2310 electors is more troublesome, since they are alleged to be members of the class only on the basis of their vote, not on their efforts to post political placards *before* the election. For present purposes, the Court will only assume that the class consists of Plaintiff and the committee, and reserves ruling on which (if any) voters can be part of the class for purposes of § 1985(3).

discrimination occurs *because* of the "peculiar and unique manner," *Browder v. Tipton, supra,* in which the class exercises its First Amendment rights. For example, in *Griffin v. Breckenridge, supra,* the complaint therein alleged that defendants committed certain unlawful acts because of the race of petitioners. 403 U.S. at 103, 91 S.Ct. at 1799. Likewise, in *Cameron v. Brock, supra,* defendants took action against supporters of a particular candidate; there is no indication that defendants therein declined to take similar action against opponents of that candidate. In short, Plaintiff herein has sufficiently alleged that he is a member of a class protected by § 1985(3), since his First Amendment rights were infringed because of the peculiar manner in which he exercised same, namely, his opposition to the charter.

For these reasons, the Court hereby overrules Defendants' motion to dismiss Count One of the Second Amended Complaint.

## III. CONCLUSION

Based on the aforesaid, Defendants' motion to dismiss the Second Amended Complaint is overruled.

Counsel will take note that a conference call will be had on Friday, February 4, 1983, at 8:20 a.m., to discuss discovery matters, an eventual trial date, etc.