Robert L. CRAIG, Plaintiff,

v.

Richard CELESTE, et al., Defendants.

Civ. No. C–1–84–1806.

United States District Court, S.D. Ohio, W.D.

July 11, 1986.

Jeffrey Silverstein, Dayton, Ohio, for plaintiff.

Halstead Stettler, Amy Goldstein, Columbus, Ohio, for defendants.

## FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW

CARL B. RUBIN, Chief Judge.

This matter is before the Court following trial and the presentation of evidence and testimony on June 2, 3, 5 and 9, 1986. Plaintiff Robert L. Craig asserts that his discharge by Defendants from a position with the Ohio Division of Transportation (ODOT) constituted a denial of constitutional rights. In accordance with Rule 52, Fed. R.Civ.P., the Court does submit its Findings of Fact, Opinion and Conclusions of Law.

## I.

### INTRODUCTION

In 1883 the Congress of the United States passed the first act dealing with the creation of a civil service system. It is a matter of some interest that this legislation was introduced by George H. Pendleton, a Senator from Cincinnati. It has always been known as the "Pendleton Act". Over one hundred years later the conflict between the "merit system" and the "spoils system" is far from over. All political parties need jobs and contributions in order to exist.

This case involved yet another dispute where a person in the classified civil service and identified with one political party was discharged by his political opponents. It should be understood that the Court undertakes no philosophical inquiry into the continued existence of patronage systems. The opinion that follows merely notes without comment the existence of common political practices. The Court is mindful of the statement once made by The

Honorable Griffin Bell, former Attorney General of the United States and former Judge of the United States Court of Appeals for the Fifth Circuit. Judge Bell observed: "You can't take politics out of politics."

## II.

### FINDINGS OF FACT

1. In 1975 Plaintiff Robert L. Craig was hired by ODOT, then known as the State Highway Department. At all times during his employment he was an identified and active Republican. By 1982 he had reached the position of Highway Maintenance Superintendent for Clermont County, Ohio. 1982 was an election year and Robert L. Craig engaged in partisan activities in support of the Republican Party, including the selling of tickets to employees under his supervision to various Republican events for the purpose of raising campaign funds. He was, at all times pertinent herein, a member of the Classified Civil Service of Ohio.[1]

2. At all pertinent times involved herein Ohio Revised Code § 124.57 provided in part as follows:

> No ... employee in the classified service of the state ... shall directly or indirectly, ... solicit ... any contribution for any political party or for any candidate for public office ... nor shall such person ... take part in politics other than to vote as he pleases and to express freely his political opinions.

3. In November, 1982, Richard Celeste, a Democrat, was elected Governor of the State of Ohio and the administration of ODOT changed from Republican to Democratic. Early in 1983, James Spurlock, then a Highway Maintenance Superintendent in the ODOT, was directed to investigate charges made by an employee in the classified service that Plaintiff had solicited him to purchase tickets for a political event. Based upon information obtained by Mr. Spurlock, charges were subsequently filed against Plaintiff and an administrative hearing was held. Notice was given to Plaintiff as follows:

> Your presence is requested at a 54–A Suspension and Removal Board Hearing scheduled for Tuesday, August 30, 1983 at 10:00 a.m., in the front office conference room located in the District Deputy Director's office. You will give testimony regarding a violation of Directive 54–A, Item 21.

(Plaintiff's Ex. 23).

4. In accordance with procedures then in effect in ODOT a hearing board was convened consisting of James Mills, Robin Oldfather[2], and James Spurlock. The hearing board recommended that Plaintiff be demoted. This recommendation was not followed. The head of ODOT determined that Plaintiff should be discharged. Plaintiff Craig was discharged and although he appealed his discharge to the State Personnel Board of Review, the decision of ODOT was upheld and the discharge affirmed.

5. At the time of Plaintiff's discharge, the departmental hearing was known as a "54A hearing" before a "54A board". (Plaintiff's Ex. 6). Subsequently the procedure was rewritten and the board became known as a "302A board" and the proceedings a "302A hearing". The revised procedures made significant changes. For the first time the hearing board became "an impartial board", the employee could "waive" the hearing and accept proposed discipline. In addition, the punishment for violating Ohio Revised Code § 124.57 was changed from dismissal to "suspension/dismissal". (Plaintiff's Exs. 5 & 19)

6. At about this time departmental actions were likewise brought against Joseph Hunter and John Owens for the same of-

---

1. Ohio Revised Code Section 124.01(C) provides: "Classified service" means the competitive classified civil service of the state, the several counties, cities, city health districts, general health districts, city school districts thereof, and civil service townships.

2. Robin Oldfather subsequently became Robin Strawser and testified in this matter under that name.

**50**

fense (Plaintiff's Exs. 21, 22). Both Mr. Hunter and Mr. Owens were removed from their positions. Both were Republicans.

7. In February, 1986, charges of violating § 124.57 were brought against Creola W. Reese (Plaintiff's Ex. 10). The evidence presented to the Court indicated that there were efforts by Ms. Reese to sell tickets for Democratic events. The affidavits supporting that charge dealt with multiple violations [3]. Ms. Reese was given an opportunity under the 302A procedure to accept discipline and to waive a hearing and she elected to do so. The punishment imposed upon Ms. Reese amounted to a five day suspension for a total loss to her of approximately $400.00. Ms. Reese at the time was the only black female superintendant of any county in ODOT (T.R. at 243, Statement of Halstead Stettler, Assistant Attorney General).

8. No other evidence was presented regarding discipline of any person who violated Ohio Revised Code § 124.57 in the same manner. Four such violations were investigated: three by Republicans, one by a Democrat. The three Republicans were removed from their positions. The one Democrat was given a five day suspension.

9. Substantial evidence was likewise presented to the Court that the Administrative Assistant to the Deputy Director of ODOT received checks and cash on a regular basis from employees of the department and from vendors who had or sought contracts with the State of Ohio (T.R. 89–95; 138–142). Evidence was likewise presented that Defendant Robert Travis was directed to "get rid of the Republicans" and that he intended to "get rid of the R's [Republicans]" (T.R. 191, 211, 267–269, 440–441). There was likewise evidence that Defendant Travis maintained a "hit list", (T.R. 270–272; 294–296) of Republican County

Supervisors whom the Democratic administration proposed to discharge.

10. ODOT employs over 7500 persons throughout the State of Ohio and supervises contracts for construction, repair and maintenance of Ohio highways.

## III.

### OPINION

The resolution of the question presented to this Court requires a consideration of the principles of law established by other courts. The Court considers as binding the following determinations.

1. A non-civil service employee may not be discharged solely for political affiliation[4]. *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

2. The politically motivated discharge of public employees is improper except where "party affiliation is an appropriate requirement for effective performance of the public office involved." *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).

3. There is a significant difference between a patronage system that intentionally uses a strict political test as the standard for firing and a patronage system that relies upon family, friends and political allies for recommendations. "The former has a single end tied to political belief ... The former is designed to call attention to political differences and punish those who differ." *Avery v. Jennings,* 786 F.2d 233 (6th Cir.1986).

5. "We hold that § 1985(3) reaches clearly defined classes such as supporters of a political candidate. If a plaintiff can show that he was denied the protection of the law because of the class of which he

---

**3.** Affidavit of Kerry Liken: "I have bought Democratic tickets from Mrs. Reese at her home. They were fish fries and *many* other picnics in the county...." (emphasis added).

Affidavit of Phil Fisher: "I, Phil Fisher, have purchased Democratic fund raiser tickets off of Creole Reese at her home and at softball games...."

Affidavit of Nancy Clark: "I have purchased political tickets in the past.... I purchased these tickets from Creole Reese." (Plaintiff's Ex. 12).

**4.** The term "noncivil service employee" is equivalent to a person in the unclassified civil service in the State of Ohio.

was a member, he has an actionable claim under § 1985(3)." *Cameron v. Brock*, 473 F.2d 608 (6th Cir.1973).

■ The Court has no difficulty in finding that Robert L. Craig was treated differently because he was a Republican. His discharge was minimally tainted by the fact that he was not given a proper due process hearing. He did not receive adequate advance notice of the hearing (Plaintiff's Ex. 23) and he was judged in part by James Spurlock (Tr. 111) who had participated in the investigation at the direction of the department head who intended to rid the department of Republicans. These violation of Mr. Craig's procedural rights, however, are technical at best. There is no doubt that he violated Ohio Revised Code § 124.57, a dischargable offense. To hold that his discharge was invalid because of these procedural deficiencies would only emphasize form over substance and obscure the real issue herein. The procedures outlined do indicate the zeal with which Mr. Craig's violation was prosecuted.

■ The gravamen of this case is not a failure of due process, but rather a disparate treatment based upon political affiliation. Both Ms. Reese and Mr. Craig committed the same offense. Both solicited political contributions from employees. The defense that Ms. Reese did not make such a solicitation on state property or on state time is irrelevant. Ohio Revised Code § 124.57 is not limited to activities on state property or during state employment time, it proscribes political solicitation at *any* time of *any* sort from classified civil servants.

The further defense that Ms. Reese did not aggressively seek to sell the tickets while Mr. Craig did, is in common parlance, a "red herring". Supervisors have an in-

herent coercive power over subordinates that is well known. Such power need not be "spelled out" nor displayed in an aggressive fashion. It is there and both superior and subordinate know it is there. Whether overt or covert, the offense remains the same. Ohio Revised Code § 124.57 is direct and specific and both Ms. Reese and Mr. Craig violated its terms.

The only remaining distinction of any significance is that Ms. Reese is a black, female Democrat and Mr. Craig is a white, male Republican. Any distinction drawn between the two on any of the three descriptive adjectives is an act of discrimination impermissible under § 1985(3).

Despite a defense presented in a somewhat naive fashion, it is clear that ODOT sought to remove Robert L. Craig because he was a Republican while at the same time soliciting contributions from employees and vendors who dealt with such department (T.R. 142).[5a] While the Defendants had the right to discharge Mr. Craig for his offense, the pretextual nature thereof became apparent when they failed to discharge Ms. Reese under the same circumstances.[5b]

■ An attempt to fashion an equitable remedy in this matter confronts the following conflicting circumstances. Plaintiff has been the victim of political discrimination. He is thus entitled to be made whole. But he did violate the law of Ohio. He was punished in an appropriate fashion and it was not until March of 1986 that disparate treatment became evident with the action against Ms. Reese. Faced with the foregoing the Court determines that Plaintiff is entitled only to be restored to his position as of the date of this Order without back pay and subject to a five day suspension.

---

**5a.** Tracy Sowders, Administrative Assistant to Morris Tipton, Deputy Director of Administration, didn't know why she examined primary voting records of applicants for employment. (Tr. 86).

**5b.** James Spurlock, Administrative Assistant, had never heard of employees being required to contribute to political events (Tr. at 107); had

never been involved in political fund raising affairs (Tr. at 115).

The foregoing appears to be at complete variance with the statement of Mr. Tipton that his office was "the political arm of the Department" (Tr. at 133) and that "contributions from classified employees were accepted until the fall of 1985" (Tr. at 135).

Since Plaintiff is the "prevailing party" in this matter, Plaintiff's counsel is entitled to a reasonable attorney fee. Plaintiff's counsel is directed to submit a request for fee in accordance with the requirements prescribed by this Court.

## IV.

### CONCLUSIONS OF LAW

A. This Court has jurisdiction pursuant to 28 U.S.C. § 1343.

B. Under Ohio law, a classified civil servant may be discharged for soliciting contributions for any political party or for any candidate for public office. Ohio Revised Code § 124.57.

■ C. Disparate application of Ohio Revised Code § 124.57 in the degree of discipline afforded classified employees based solely on their political affiliation violates the First Amendment right to freedom of association and the Fourteenth Amendment right to equal protection of the law. *See Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

D. Membership in a political party constitutes a clearly defined class for purposes of 42 U.S.C. § 1985(3). *Cameron v. Brock*, 473 F.2d 608 (6th Cir.1973).

E. Proof of a conspiracy under § 1985(3) must include proof of "its purpose to deprive a person or class of persons of equal protection of the laws, an act in furtherance of the conspiracy and injury or deprivation of the rights of plaintiff." *Id.* at 610.

■ F. Evidence of an intention to "get rid of the R's" by defendants and subsequent dismissal of Plaintiff was sufficient to show existence of a conspiracy under 42 U.S.C. § 1985(3).

■ G. An Ohio classified civil service employee may not be terminated without due process of law. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). However, even where there has been a deprivation of due process, no damage has occurred where post-termination proceedings indicate that Plaintiff properly would have been dismissed even if he had received due process. *Kendall v. Board of Education of Memphis City*, 627 F.2d 1, 6 (6th Cir.1980).

IT IS SO ORDERED.

LET JUDGMENT ISSUE IN ACCORDANCE WITH THE FOREGOING.