Juan B. PÉREZ–SÁNCHEZ et al., Plaintiffs, Appellants,

v.

PUBLIC BUILDING AUTHORITY, et al., Defendants, Appellees.

No. 07–1869.

United States Court of Appeals, First Circuit.

Submitted May 6, 2008.

Decided June 30, 2008.

Raúl Barrera Morales, Jesús Hernández Sánchez, and Hernández Sánchez Law Firm on brief for appellant.

Nerylú Figueroa–Estasie, Sánchez Betances, Sifre, and Muñoz Noya, P.S.C., Salvador J. Antonetti–Stutts, Solicitor General, Mariana D. Negrón–Vargas, Deputy Solicitor General, Maite D. Oronoz–Rodríguez, Deputy Solicitor General, and Rosa Elena Pérez–Agosto, Assistant Solicitor General, on brief for appellees.

Before LYNCH, Chief Judge, O'CONNOR,* Associate Justice, and TORRUELLA, Circuit Judge.

O'CONNOR, Associate Justice (Retired).

We consider claims of constitutional violations brought in the aftermath of Puerto Rico's Popular Democratic Party election victories in 2001, and affirm the district court's dismissal of some claims, and grant of summary judgment on other claims.

## I.

Appellant Juan Pérez–Sánchez, a member of Puerto Rico's New Progressive Party ("NPP"), has worked at the Public Building Authority ("PBA") since 1993. His long work service was rewarded with promotions; in December of 2000, he was appointed as acting regional director of PBA.

Appellant's career victory, however, was shortlived. In January of 2001, the NPP was defeated in the Puerto Rican general elections, and the Popular Democratic Party ("PDP") won instead. Shortly after the PDP's rise to power, appellant alleged that he suffered discrimination as a result of his political orientation.

The precise facts of appellant's alleged discrimination have not been fully presented by the parties. Nonetheless, appellant claims that in 2001, he was removed from his office by a member of the PDP. He was stripped of the supervisory functions which he had formerly exercised, and those duties were given to another member of the PDP. Appellant alleges further that he was subjected to numerous indigni-

---

* The Hon. Sandra Day O'Connor, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

ties over the course of the next half-decade: Some unknown person broke his office door, his office keys were taken away, his parking spot was removed, and ethics violations were filed against him on the grounds that he had a political bumper sticker on his car. Appellant contends, in short, that members of the PDP made his life miserable.

On April 12, 2005, he sued the PBA, as well as numerous administrators and officials in the PBA, in both their personal and official capacities. He claimed emotional and financial damages exceeding ten million dollars.

More than a year after appellant's suit was filed, the district court granted a motion to dismiss the suit against the defendants who were sued in their personal capacities for lack of proper service. It then granted summary judgment to the defendants on appellant's 42 U.S.C. § 1983 claim, on the grounds that the suit fell outside the statute of limitations, and on appellant's § 1985 claim, on the grounds that a conspiracy to discriminate on the basis of political orientation was not cognizable under § 1985.

This appeal followed.

## II.

Appellant brought suit against numerous administrators and officials in the PBA in both their personal and official capacities. The Federal Rules of Civil Procedure provide:

> [S]ervice upon an individual from whom a waiver has not been obtained and filed ... may be effected in any judicial district of the United States ... by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode ... or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Fed.R.Civ.P. 4(e).

Appellant served his complaint on Sonia M. Serrano–Rivera. As PBA's Legal Services Director, Ms. Serrano–Rivera is authorized to accept service for the defendants in their official capacities. She is not, however, an agent for the defendants in their individual capacities. Appellant did not otherwise serve the defendants in their individual capacity.

■ The district court dismissed appellant's suit against the individual defendants on the grounds that service was not properly made within 120 days after the filing of the complaint. *See* Fed.R.Civ.P. 4(m).

Appellant claims his failure to properly serve the defendants in their individual capacities should be excused because Ms. Serrano–Rivera indicated she was able to receive process for the defendants in their individual capacities. Appellant does not deny that the defendants in this case have never been served in their individual capacities. Even after appellant was informed of the defects in service, the record contains no evidence that he attempted to perfect service. *Cf. Benjamin v. Grosnick,* 999 F.2d 590, 592 (1st Cir.1993) (excusing failure to serve within 120 days when service was eventually made and plaintiff had good cause for delay).

The district court thus did not abuse its discretion in dismissing appellant's suit against the defendants in their personal capacities. *See Blair v. City of Worcester,* 522 F.3d 105, 112–14 (1st Cir.2008) (dismissal is appropriate where service is made on an individual who does not serve as agent for the defendant).

## III.

■ Appellant alleged that appellees violated his constitutional right to freedom of association, and sued for damages under 42 U.S.C. § 1983. A claim under § 1983 takes the statute of limitations from the underlying state cause of action. *Owens v. Okure*, 488 U.S. 235, 240–41, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). In Puerto Rico, the limitations period for personal injuries is one year. P.R. Laws Ann. tit. 31, § 5298(2); *see also Morales–Tañon v. Puerto Rico Elec. Power Auth.*, 524 F.3d 15, 18 (2008).

■ In the general course of business, appellant's case would fall well outside the statute of limitations. Appellant suffered his first—and most devastating—employment setbacks in 2001, shortly after the PDP came to power. He did not, however, bring suit until 2005, more than four years after that initial injury, and three years after the statute of limitations had run.

■ Appellant nonetheless argues that the statute of limitations should be evaluated under the continuing violation doctrine. Under this doctrine, a plaintiff can recover for injuries that occurred outside the statute of limitations under certain narrow conditions. Although the name of the doctrine may sound auspicious for late-filing plaintiffs, it does *not* allow a plaintiff to avoid filing suit so long as some person continues to violate his rights. "The 'continuing violation' doctrine is misnamed.... The office of the misnamed doctrine is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." *Morales–Tañon*, 524 F.3d at 18–19 (quoting *Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 801 (7th Cir.2008)).

As the district court recognized, the events surrounding appellant's alleged demotion all took place in 2001. While plaintiff points to numerous additional grievances that took place in later years, the district court correctly noted that all of those were either effects of that initial wrongful conduct, or isolated incidents that did not amount to separate and actionable violations under § 1983.

The district court thus did not err in finding that appellant's § 1983 claim was time-barred.

## IV.

■ Appellant alleges that appellees also engaged in a conspiracy to deprive him of his constitutional rights, in violation of 42 U.S.C. § 1985(3). Section 1985(3) prohibits "two or more persons in any State or Territory [from] conspire[ing to] ... depriv[e] ... any person or class of persons of the equal protection of the laws."

■ The First Circuit has held that a claim under § 1985(3) must contain four elements. First, the plaintiff must allege a conspiracy; second, he must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, he must identify an overt act in furtherance of the conspiracy; and finally, he must show either injury to person or property, or a deprivation of a constitutionally protected right. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996).

It is this second requirement that is at issue in this case. It has long been established that a claim under § 1985(3) requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Appellant argues that his suit falls into *Griffin's* inclusive "otherwise class-based" animus: He was discriminated against on the basis of his political affiliation.

In support of this proposition, appellant cites the Sixth Circuit's decision in *Cameron v. Brock*, 473 F.2d 608 (6th Cir.1973). That case dealt with a contentious local election for Sheriff. On the eve of the election, the challenger distributed a strongly-worded pamphlet suggesting that the incumbent had engaged in numerous improprieties. The Sheriff found the pamphlets in a truck. Threats were allegedly issued, and the pamphlets were destroyed. *Id.* at 609. The owner of the pamphlets brought suit under § 1985. The Sixth Circuit held that a claim under § 1985 could be brought under these circumstances, because § 1985 protected against invidious discrimination aimed at any "clearly defined class[ ], such as supporters of a political candidate." *Id.* at 610.

If we were to adopt the Sixth Circuit's view in *Cameron*, appellant would be able to seek damages under § 1985 on the grounds that he was denied equal protection of the laws because he was discriminated against because of his affiliation with the NPP. Intervening Supreme Court precedent, however, calls the result in *Cameron* into considerable doubt.

In *United Brothers of Carpenters and Joiners v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), the Supreme Court considered whether a § 1985 claim could lie when the underlying charge was discrimination on the basis of union membership. If the Supreme Court had adopted the Sixth Circuit's broad view in *Cameron*, it would have held that any "clearly defined class"—including the class of union members—would qualify under § 1985. The Supreme Court, however, rejected the notion that § 1985 protected against discrimination on the basis of union membership. *Id.* at 838, 103 S.Ct. 3352.

In so holding, it explained that § 1985(3) was intended to address racial animus first and foremost. While the Court did not foreclose the possibility that other forms of invidious discrimination might be compensable under § 1985(3), it held that not all clearly defined classes were covered by the statute. In particular, it explained in dicta:

> [W]e find difficult the question whether § 1985(3) provided a remedy for every concerted effort by one political group to nullify the influence of or do other injury to a competing group by use of otherwise unlawful means. To accede to that view would go far toward making the federal courts, by virtue of § 1985(3), the monitors of campaign tactics in both state and federal elections, a role that the courts should not be quick to assume. If respondents' submission were accepted, the proscription of § 1985(3) would arguably reach the claim that a political party has interfered with the freedom of speech of another political party by encouraging the heckling of its rival speakers and the disruption of the rival's meetings.

*Id.* at 835, 103 S.Ct. 3352.

The Court arguably only decided that § 1985(3) did not reach conspiracies motivated by economic or commercial animus, and the Sixth Circuit has since reaffirmed that animus based on political affiliation is entitled to protection under § 1985(3). *See Conklin v. Lovely*, 834 F.2d 543, 549 (6th Cir.1987) (holding that *Cameron's* extension of § 1985(3) protection to political affiliation is still available post-*Scott*). The Sixth Circuit, however, stands alone on this question. Every other circuit to reach the issue has decided otherwise. *See Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir.2006) ("[U]nlike discrimination against a class on the basis of race, sex, or mental retardation, discrimination on the basis of political affiliation is not, as a matter of law, so invidious such that

§ 1985(3) would apply."); *Grimes v. Smith,* 776 F.2d 1359, 1366 (7th Cir.1985) (holding that § 1985(3) does not reach non-racial political conspiracies); *Brown v. Reardon,* 770 F.2d 896, 906 (10th Cir.1985) (section 1985(3) claim extends only to members of recognized classifications such as race, sex, religion, or national origin); *Harrison v. KVAT Management,* 766 F.2d 155, 162 (4th Cir.1985) (political party status not protected by § 1985(3)). *But see Gleason v. McBride,* 869 F.2d 688, 695 (2d Cir.1989) (declining to resolve the question of whether political affiliation is protected under § 1985(3), while recognizing that *Scott* called its holding in *Keating v. Carey,* 706 F.2d 377, 386–88 (2d Cir.1983), into doubt).

We find the Supreme Court's dicta in *Scott* and the reasoning of our sister circuits persuasive. Recognizing a claim under § 1985(3) for discrimination due to political affiliation would open the federal courts to a wide variety of claims, ranging from employment disputes such as this one to election-related claims. We thus decline to extend § 1985(3)'s protection to political affiliation. *See also Aulson v. Blanchard,* 83 F.3d 1, 6 & n. 3 (1st Cir. 1996) (noting that attempts to define a political class may prove too complicated to serve as a cognizable class under § 1985(3)).

We thus hold that § 1985(3) provides no remedy for animus on the basis of political beliefs. The district court did not err in holding that appellant had not stated a cognizable claim under § 1985(3).

## V.

Because the district court properly dismissed appellant's claim against the appellees in their personal capacity, and correctly held that his claims against the government entities and the appellants who were sued in their official capacities to be either time-barred or not cognizable, its judgment is *AFFIRMED.*