Leonard J. ASSELIN, Jr.,
Plaintiff Pro Se,

v.

SHAWNEE MISSION MEDICAL
CENTER, INC., et al.,
Defendant.

Civ. A. No. 94–2505–KHV.

United States District Court,
D. Kansas.

July 25, 1995.

Leonard J. Asselin, Jr., Prairie Village, KS, pro se.

Sally H. Harris, John M. Graham, Jr., Wallace, Saunders, Austin, Brown & Enochs, Overland Park, KS, for Shawnee Mission Medical Center, Inc.

Janet M. Simpson, Holbrook, Heaven & Fay, P.A., Kansas City, KS, for Seventh–Day Adventists Church.

Phillip R. Dupont, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, for Steven J. Hess.

Philip P. Ashley, M. Warren McCamish, Williamson & Cubbison, Kansas City, KS, for Gregory Rick, Jr.

### MEMORANDUM AND ORDER
### TO SHOW CAUSE

VRATIL, District Judge.

This matter comes before the Court on *Plaintiff's Motion to File Second Amended Complaint* (Doc. # 30) filed April 11, 1995; *Plaintiff's Motion to File Supplemental*

*Pleading* (Doc. # 47) filed May 9, 1995; the *Motion of Plaintiff, Leonard J. Asselin, Jr. Requesting Leave of the Court To File A Third Amended Complaint Pursuant to FedRCivP 15, and the Court's Permission to Extend the Time for Service Pursuant to FedRCivP 4(m)* (Doc. # 51) filed June 22, 1995; and the *Motion of Plaintiff, Leonard J. Asselin, Jr. Requesting Leave of the Court For Possible Intervention by the United States Department of Justice Pursuant to the Americans With Disabilities Act 28 CFR 36.501–36.508* (Doc. # 54) filed June 22, 1995.

This matter also comes before the Court with respect to various motions to dismiss: *Defendant Shawnee Mission Medical Center, Inc.'s Motion To Dismiss for Lack of Jurisdiction* (Doc. # 15) filed February 28, 1995; *Defendant Hess' Motion to Dismiss First Amended Complaint and Motion to Quash* (Doc. # 18) filed March 10, 1995 and plaintiff's *Motion to Reconsider Defendant Hess' Position Relative to Facts of Service* (Doc. # 53) filed June 22, 1995; *Defendant Gregory Rick, Jr., M.D.'s Motion to Dismiss* (Doc. # 33) filed April 17, 1995; and *Defendant Seventh–Day Adventists Church's Motion to Dismiss for Lack of Jurisdiction* (Doc. # 35) filed April 17, 1995.

### Plaintiff's Complaint and Amendments Thereto

Rule 15 of the Federal Rules of Civil Procedure allows one amendment of the pleadings, before a responsive pleading is served or within 20 days after service. Subsequent amendments are allowed by leave of court or by written consent of an adverse party. Fed. R.Civ.Pro. 15(a). Subsequent amendments should be "freely given when justice so requires." *Id.*

On December 12, 1994, plaintiff filed his *Complaint of Negligence* in this case. On February 10, 1995, with leave of court, he filed an amended complaint which he characterized as his "First Amended Complaint of Medical Negligence" (Doc. # 12). On April 11, 1995, in response to various motions to dismiss, plaintiff sought leave to file a second amended complaint which further clarified his claims. By way of still further clarification, plaintiff lodged a motion for leave to file a supplemental pleading and a motion for leave to file a third amended complaint.

Defendants argue that the Court lacks subject matter jurisdiction because complete diversity does not exist and plaintiff alleges no viable basis for federal jurisdiction. In attacking the jurisdictional basis for plaintiff's complaint, however, they confront a moving target. While plaintiff is no stranger to the field of litigation, he does appear *pro se* and the Court has entertained consecutive motions and purported "clarifications" of plaintiff's original complaint. Moreover, the Court has made extraordinary efforts to ascertain the gist of plaintiff's claim. To that end the Court has reviewed all of plaintiff's various pleadings and motions and for purposes of this order, accepts their factual allegations as true. From that vantage point, as best the Court can determine, the factual basis of plaintiff's claim is that stated below. For purposes of evaluating defendants' motions to dismiss, the Court grants all pending motions for leave to amend.

### Plaintiff's "Second Amended Complaint"

The Court summarizes the allegations of plaintiff's various complaints and proposed amendments, and accepts them as true for purposes of the pending motions to dismiss:

Shawnee Mission Medical Center, Inc. [SMMC] is owned and governed by the Seventh–Day Adventist church: Midwest Adventist Health Services, Inc. [Midwest], owns the hospital facility and the Mid–America Union Conference of Seventh–Day Adventists [Mid–America Conference], an unincorporated association, is its governing body. The Mid–America Conference is part of the General Conference of Seventh–Day Adventists in Silver Spring, Maryland. The General Conference, through Midwest and the Mid–America Conference, controls, sponsors, manages, operates and administers SMMC. Steven J. Hess, M.D., was plaintiff's attending neurosurgeon at SMMC. Gregory Rick, M.D., a gastroenterologist, consulted with Dr. Hess concerning plaintiff's treatment. Both doctors acted as agents of SMMC and the Seventh–Day Adventists.

Defendants are places of public accommodation under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and other

federal statutes, and they receive federal funds through various programs, including Hill–Burton, Medicare, Medicaid and C.H.A.M.P.U.S.

On December 10, 1992, plaintiff (who was then 56 years of age) fell from a one-story roof and was transported by ambulance to SMMC. Plaintiff was in a great deal of pain and he was hospitalized from December 10, 1992 until January 1, 1993, for an acute compression fracture of his back.

Plaintiff has suffered from epilepsy, a disabling seizure disorder, since an accident in his teen-age years. Plaintiff controls the seizures through medication, i.e. 200 mg. of Dilantin in the morning plus 100 mg. of Dilantin and 60 mg. of phenobarbital at bedtime. In the emergency room on December 10, 1992, plaintiff disclosed his medical condition, including his epilepsy, along with his current medications and their dosages. At that time, plaintiff also executed a consent to hospital and medical treatment. The consent form embodied a representation that "my doctor will explain to me ... his recommended treatment and any associated risks involved." Defendants did not advise plaintiff of any treatment risk with respect to the medications which they administered, nor did they supply plaintiff written information concerning his rights as a patient. Also, defendants did not test plaintiff's blood levels of Dilantin and phenobarbital in the emergency room. As a result, they had no "benchmark" blood level for administering further medication.

Initially, Dr. Hess wanted to perform a fusion operation on plaintiff's back. Plaintiff demanded a second opinion, however, and in the end the agreed treatment was three weeks of bed rest. Defendants cautioned plaintiff that a chip of his backbone was resting against his spinal column, and that his movements should be restricted to "log rolling" from side to side.

While plaintiff was in the hospital, defendants forced him to take various medications which were inappropriate for epileptics. One such drug was Metoclopramide, also known as Reglan, an antipsychotic drug which severely and permanently affects an individual's ability to think and communicate. At approximately 9:30 a.m. on the morning of December 24, 1992, after almost two weeks of being medicated with Reglan and other prescription medications, plaintiff experienced the "aura" which precedes an epileptic seizure. He immediately reported this sensation to hospital nurses. Plaintiff also questioned whether he had received his maintenance medications the preceding night, and asked that his blood levels be checked. Notwithstanding repeated requests and complaints, defendants refused to modify their policy and test his blood. Meanwhile, plaintiff lay in total fear, knowing that a seizure could move the bone chip laying next to his spinal cord because seizures cause him to arch his back.

At approximately 2:00 p.m., after four hours of begging and pleading for a blood test, plaintiff suffered a grand mal seizure in the presence of his son and the nurses he had summoned to his bedside. Although certain forms of grand mal seizures can be life-threatening, plaintiff's seizure lasted only two to three minutes and nurses treated it by placing plaintiff on his side, surrounded by pillows. Blood tests conducted immediately after the seizure revealed that plaintiff's Dilantin level was low and his phenobarbital level was sub-therapeutic.

After the seizure, plaintiff asked defendants whether the in-hospital medications had anything to do with his seizure. Defendants replied that plaintiff's liver was at fault. Plaintiff "first became inquisitive" about the in-hospital medications in November, 1993, when he saw a private neurologist. On or about November 28, 1994, plaintiff purchased a copy of his SMMC medical records and began to realize that some of his medications had warnings and serious side effects. In December, 1994, while visiting someone at the University of Kansas Medical Center, plaintiff also realized that SMMC had not provided him the Patients Bill of Rights or other printed literature on patient rights.

SMMC released plaintiff on January 1, 1993, but readmitted him for x-rays on January 14, 1993. After plaintiff was discharged but while he was still taking his prescribed

medications in January, 1993, he suffered another seizure.

Plaintiff seeks $25,000 for defendants' failure to provide him a copy of the *Patients Bill of Rights*, $125,000 for defendants' failure to provide information sufficient for purposes of informed consent, other damages ("the maximum allowable"), plus costs and attorney's fees under the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*[1]; the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.;* what plaintiff refers to as the Patient Self–Determination Act, 42 U.S.C. § 1395cc(f)(1)(A)[2] and § 1395cc(f)(2)(A)[3]; what plaintiff refers to as the Developmentally Disabled Assistance Act, 42 U.S.C. § 6000 *et seq.*[4]; 42 U.S.C. § 1985[5] and § 1986[6]; the Rehabilitation Act, 29 U.S.C. § 794[7], as allegedly amended by what plaintiff refers to as the Civil Rights Restoration Act of 1988; and the First, Fifth and Fourteenth Amendments to the United States Constitution. In addition, plaintiff seeks recovery for negligence under Kansas law. In that regard, plaintiff claims that defendants were negligent in (a) administering approximately 20 different drugs or medications during his hospitalization; (b) administering Reglan, which was expressly contraindicated for epileptic patients; (c) prescribing six other medications for which seizures are a known adverse or side effect; (d) prescribing one or two medications for which drug interaction with Dilantin is a known side effect; (e) failing to inform plaintiff of possible adverse effects, thereby denying his right to give informed consent; (f) failing to properly monitor plaintiff's blood levels and refusing plaintiff's requests for simple blood tests to determine the therapeutic blood levels of his seizure control medication until after his seizure on December 24, 1992; (g) failing to adequately examine plaintiff, to insure that he was able to withstand the prescribed drugs; (h) failing to advise plaintiff of alternative drug therapies; (i) overbilling services and/or supplies to plaintiff; and (j) failing to install policies, practices and procedures to insure that SMMC employees acted as patient advocates in preventing the administration of drugs without the informed consent of the patient.

Plaintiff invokes both diversity jurisdiction under 28 U.S.C. § 1332 and federal question jurisdiction under 28 U.S.C. § 1331 and the foregoing statutes.

## Defendants' Motions to Dismiss

 In deciding motions to dismiss, the Court must accept plaintiff's allegations as

1. In general, these provisions of the ADA decree that no individual shall be discriminated against, on the basis of disability, in the full and equal enjoyment of the goods and services of any place of public accommodation. 42 U.S.C. § 12182(a).

2. While the Court finds no statute which is popularly referred to as the Patient Self–Determination Act, 42 U.S.C. § 1395cc(f)(1)(A) appears in the statute which establishes a scheme of health insurance for the aged and disabled. It requires that certain health care providers maintain written policies and procedures with respect to all adult patients. More specifically, those providers must give each patient written information concerning his or her state law rights to make decisions concerning medical care, to accept or refuse medical or surgical treatment, and to formulate *advance directives*. In addition, the health care provider must supply the patient a copy of its written policies respecting the implementation of such rights.

3. Section 1395cc(f)(2)(A) provides that in the case of a hospital, the information required under 42 U.S.C. § 1395cc(f)(1)(A) shall be provided at the time of the patient's admission as an inpatient.

4. The cited statutes were enacted to assure that individuals with developmental disabilities and their families participate in the design of and have access to culturally competent services, supports and other assistance and opportunities that promote independence, productivity, and integration and inclusion into the community, through state developmental disabilities councils, protection and advocacy systems, university-affiliated programs, and other national initiatives. 42 U.S.C. § 6000(b).

5. Section 1985(3) provides a civil remedy against persons who conspire to deprive any person or class of persons of equal protection of the laws.

6. Section 1986 provides a civil remedy against persons who, having knowledge that any wrong mentioned in 42 U.S.C. § 1985 is about to be committed and having power to prevent or aid in preventing the wrong, fail or refuse to do so.

7. Section 794 provides that no otherwise qualified individual with a disability shall, solely because of his or her disability, be subjected to discrimination under any program or activity receiving federal financial assistance.

true and construe them in the light most favorable to plaintiff. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir.1991). Plaintiff bears the burden of proof in establishing federal jurisdiction. *Penteco Corp. v. Union Gas System, Inc.*, 929 F.2d 1519, 1521 (10th. Cir.1991). With a *pro se* case, however, the court affords a plaintiff more leniency, and must liberally construe the complaint. *See Oltremari v. Kansas Social & Rehabilitative Service, Inc.*, 871 F.Supp. 1331, 1333 (D.Kan. 1994).

In its *Order* (Doc. #8) filed January 31, 1995, the Court analyzed the law of subject matter jurisdiction as it pertains to this case. Subject matter jurisdiction in the federal courts may be premised on diversity of citizenship under 28 U.S.C. § 1332, or on federal question jurisdiction under 28 U.S.C. § 1331.

## A. Diversity Jurisdiction

■ Plaintiff cannot sustain a claim under 28 U.S.C. § 1332 due to a lack of complete diversity. Courts routinely require "total diversity," meaning that "all the parties on one side must have citizenship diverse to those on the other side." *Knoll v. Knoll*, 350 F.2d 407, 407 (10th Cir.1965). Plaintiff is a Kansas resident. Defendants Hess and Rick are Kansas residents. Defendant SMMC is a Kansas corporation. Diversity jurisdiction therefore fails for lack of complete diversity.

## B. Federal Question Jurisdiction

■ Federal question jurisdiction involves a claim "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. To establish federal question jurisdiction, a federally created right or immunity must be an essential element of the plaintiff's cause of action. *Gully v. First National Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936).

### 1. Americans with Disabilities Act

■ Plaintiff claims that defendants discriminated against him on the basis of disability (epilepsy), in that they (a) failed to establish a therapeutic level with respect to plaintiff's maintenance medication; (b) forcibly administered Reglan without informing plaintiff of the manufacturer's published adverse reactions and warnings; (c) subjected plaintiff to unnecessary and inappropriate treatment and medication, *i.e.* antipsychotic drugs for a fractured back; (d) refused to modify hospital policy and check plaintiff's blood level upon reasonable request; and (e) failed to provide plaintiff a copy of the *Patients Bill of Rights*.

Plaintiff claims that Title III of the ADA affords a basis for the exercise of federal jurisdiction because defendants discriminated against him "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). Under the ADA, discrimination includes failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary accommodations to individuals with disabilities; and failing to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or is otherwise treated differently. 42 U.S.C. § 12182(b)(2)(A).

Plaintiff's allegations meet the threshold level of sufficiency for jurisdiction under the ADA. Plaintiff alleges that defendants knew of his disability and yet failed to make reasonable modifications in policies, practices or procedures, when such modifications were necessary to accommodate plaintiff's disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii). Considering the *pro se* nature of this case, the Court finds this allegation affords a sufficient basis for the exercise of federal jurisdiction.[8]

**8.** The Court expresses no view on the factual plausibility of plaintiff's claim, but must accept his allegations as true. Defendants' briefs are of little assistance in evaluating the ADA jurisdictional issue because their positions are largely non-responsive to this simple fact of life. Given plaintiff's allegations, the Court cannot accept Dr. Rick's argument that as a matter of law, the

ADA does not apply to physicians "in this setting." Likewise, the Court cannot accept SMMC's preposterous assertion that the sole function of Title III of the ADA is to "prohibit entities from maintaining places of business that are not physically accessible" and that federal jurisdiction must fail because plaintiff does not

### 2. Federal Food, Drug & Cosmetic Act

■ The Court is uninformed why plaintiff believes he has an actionable claim under the Federal Food, Drug and Cosmetic Act. Absent some colorable theory of relief, the statute affords no basis for the exercise of federal question jurisdiction. Moreover, the Supreme Court has held that the Act does not provide a private cause of action. *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 810, 106 S.Ct. 3229, 3233, 92 L.Ed.2d 650 (1986). Thus plaintiff may not assert federal jurisdiction under this theory.

### 3. Patient Self–Determination Act Claim

■ Plaintiff claims that (a) defendants failed to warn him of published drug side effects, in violation of 42 U.S.C. § 1395cc(f)(1)(A) and § 1395cc(f)(2)(A); (b) conspired to keep such information from him before and after the seizure; (c) prescribed and instructed plaintiff to take Reglan, even after his discharge; and (d) failed to inform plaintiff of his right to perform advance directives, to accept or refuse any procedure, drug or treatment, and to be informed of the consequences of any such refusal based on informed consent.

■ In its *Order* (Doc. # 8) filed January 31, 1995, the Court held that 42 U.S.C. § 1395cc(f)(1)(A) and § 1395cc(f)(2)(A) (which plaintiff then referred to as the "Patients Bill of Rights Act") do not afford plaintiff a private cause of action. The Court is aware of no statute known as the "Patient Self–Determination Act," but the cited statutes do not expressly afford plaintiff any more relief than they did previously. Moreover, under *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), plaintiff has no implied private cause of action.[9] Thus plaintiff cannot premise federal jurisdiction on any claim under 42 U.S.C. § 1395cc.

### 4. Developmentally Disabled Assistance Act

■ Plaintiff claims that he is "developmentally disabled" and that he therefore enjoys both statutory and Constitutional protection which defendants infringed by (a) failing to provide appropriate treatment in a setting least restrictive of his personal liberty; and (b) usurping plaintiff's right to make fundamental life choices, even to the detriment of his own health.

The so-called Developmentally Disabled Assistance Act, 42 U.S.C. § 6000 *et seq.*, does not provide plaintiff a private cause of action. The Act provides funding to assist state created and managed programs which are directed to the Act's purpose of assuring that developmentally disabled persons and their families have access to services and support. 42 U.S.C. § 6000(b); *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 11, 101 S.Ct. 1531, 1536–37, 67 L.Ed.2d 694 (1981). In keeping with this purpose, the Act only provides individuals a cause of action against state actors. *See Garrity v. Gallen,* 522 F.Supp. 171, 201 (D.N.H.1981). Because plaintiff has not alleged that any defendants are state actors, plaintiff may not maintain a claim under 42 U.S.C. § 6000 *et seq.*

### 5. Civil Rights Acts, 42 U.S.C. § 1985 and § 1986

■ Plaintiff cites 42 U.S.C. § 1985 and § 1986 as a basis for federal jurisdiction, but he does not allege facts sufficient to support that position. In order to state a claim under Sections 1985 and 1986, plaintiff must allege that (1) defendants conspired to deprive him of equal protection, privileges and

---

claim "that he was denied physical access to any business facility because of his disability."

9. When the statutory authority is unclear, courts evaluate four factors to determine whether a private cause of action implicitly exists. *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975). The factors include (1) whether plaintiff is one of a class for whose *especial* benefit the statute was enacted; (2) whether there is an indication of legislative intent to create or deny such a remedy; (3) wheth-er such a remedy would be inconsistent with the underlying legislative purpose; and (4) whether the cause of action is one traditionally relegated to state law. *Id.* at 78–85, 95 S.Ct. at 2087–91. Courts tend to give more weight to the second and third factors. *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 145, 105 S.Ct. 3085, 3091–92, 87 L.Ed.2d 96 (1985); *L'ggrke v. Benkula,* 966 F.2d 1346, 1347 (10th Cir.1992).

immunities, or to obstruct the course of justice; (2) defendants acted under color of state law and authority; and (3) the acts done in furtherance of the conspiracy resulted in injury to plaintiff which prevented him from exercising his rights of citizenship. *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971). Even allowing plaintiff a liberal reading of his complaint, plaintiff has not alleged that defendants acted under color of state law. Thus, this claim for federal jurisdiction fails.

### 6. Rehabilitation Act, as amended by the Civil Rights Restoration Act

■ Plaintiff claims that under the so-called Civil Rights Restoration Act, he has an implied right of action against recipients of federal funds. He also claims that defendants violated the Rehabilitation Act by (a) failing to establish a blood level basis of his medications upon admittance to SMMC; (b) thereafter refusing reasonable requests for blood level checks; and (c) usurping plaintiff's right to a safe and humane environment by providing treatment that was not appropriate or the "least restrictive" treatment required by the Act.

■ Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, provides plaintiff a private case of action. *Pushkin v. Regents of University of Colorado,* 658 F.2d 1372, 1378 (10th Cir.1981), citing *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). In order to establish such a cause of action, plaintiff must allege a *prima facie* case that he is an "otherwise qualified handicapped individual" and that he "solely by reason of his handicap, [was] denied the benefits of . . . [a] program receiving Federal funding." 29 U.S.C. § 794; *Pushkin,* 658 F.2d at 1385. Plaintiff meets the first prong by alleging that he was an epileptic patient admitted for treatment. Plaintiff also must allege, however, that defendants denied him the benefits of treatment at SMMC "solely by reason of his handicap." 29 U.S.C. § 794. Although plaintiff's status as a epileptic is central to his claim, he does not claim that defendants denied him any aspect of treatment *because* of his handicap, nor do his allegations yield

any reasonable inferences to this effect. Therefore plaintiff has not pleaded a *prima facie* case under the Rehabilitation Act, and that statute affords him no basis for the exercise of federal jurisdiction.

### 7. First, Fifth and Fourteenth Amendments

■ Plaintiff complains that in violation of his rights under the Fourteenth Amendment, defendants (a) violated his liberty interest to accept or reject any drugs or medications; and (b) by failing to communicate adverse information about certain drugs, violated his rights of privacy and due process. Plaintiff also claims that defendants violated his First Amendment rights by (a) failing to provide notice of the warnings, adverse reactions and serious side effects of certain drugs; and (b) denying plaintiff's rights of privacy, free speech and free thought, the "right to produce a thought—or refuse to do so—[being] as important as the right protected in *Roe v. Wade* to give birth or abort." Finally, plaintiff claims that defendants violated his Fifth Amendment right to due process.

■ Courts may provide remedies for constitutional violations only if the violation can be attributed to an entity acting under state law. *See Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 349, 95 S.Ct. 449, 452–53, 42 L.Ed.2d 477 (1974). Courts utilize two approaches in deciding what degree of private activity as governmental activity is necessary to constitute state action. Courts require either action constituting a "public function," or action with a sufficient "nexus" to the government. *See Jackson,* 419 U.S. at 352, 95 S.Ct. at 454; *Rendell–Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982).

Under either standard, defendants in this case are not alleged to be state actors. First, plaintiff makes no allegation that SMMC or any other defendants performs functions which traditionally are the exclusive function of the state. Second, a sufficient nexus to warrant a finding of state action does not exist between defendants and the government. Nothing in plaintiff's pleadings points to a connection between the

government and the deprivation allegedly suffered by plaintiff.

## Motion For Possible Intervention

■ Plaintiff argues that this case is of "general public importance" and asks the court's "instant permission" for the United States Department of Justice to intervene on his behalf under 28 C.F.R. § 36.501 *et seq.* SMMC correctly notes that under 28 C.F.R. § 36.501, it is the privilege of the Attorney General—not plaintiff—to seek intervention. To date, Janet Reno has not certified this case as one of general public importance, nor has she sought leave to intervene. Plaintiff's motion is therefore denied.

## Plaintiff's Motion to Reconsider

■ Dr. Hess originally argued that plaintiff had not obtained valid service of process, and that service should be quashed, because plaintiff attempted service by regular (rather than certified) mail. The Court agreed with defendant's position and quashed service on Dr. Hess. In response, plaintiff on March 20, 1995, sent by certified mail, as required by Rule 4 of the Federal Rules of Civil Procedure, a Notice of Lawsuit and Request for Waiver of Service of Summons. Dr. Hess did not waive service, however, and to this date it does not appear that he has been effectively served or subjected to personal jurisdiction in this Court.

Plaintiff asks the Court to "reconsider" the position of Dr. Hess "relative to facts of service." In support of this request, plaintiff complains that (1) counsel for Dr. Hess did not file an entry of appearance under Rule 111(d) of the Rules of Practice and Procedure of this Court; (2) the waiver of summons was due on April 20, 1995, but Dr. Hess never returned it; and (3) Dr. Hess did not file an answer or otherwise respond to plaintiff's complaint.

All of these events occurred after the Court quashed service on Dr. Hess. They are not properly the subject of a motion to "reconsider." Furthermore, the Court has no idea what judicial action, if any, plaintiff is seeking. From all that appears in the record, plaintiff still has not obtained valid service on Dr. Hess and no issues remain for decision. Plaintiff's motion for reconsideration is denied.

## Motion to Dismiss of Seventh–Day Adventists Church

■ In addition to seeking dismissal on jurisdictional grounds, the Seventh–Day Adventist Church argues that service should be quashed because plaintiff's purported service was improper. More specifically, defendant argues that "the Seventh–Day Adventist Church" is not the correct name of the party that plaintiff intends to sue, and that "the Seventh–Day Adventist Church" is not, in fact, an entity which can be sued. *Affidavit of G. Ralph Thompson, Secretary, of the General Conference of Seventh–Day Adventists,* attached as *Supplement to Defendant Seventh–Day Adventists Church's Motion To Dismiss For Lack of Jurisdiction* (Doc. # 49) filed May 31, 1995. These statements are undisputed, except by hearsay statements of an unidentified "woman in the SMMC administrative office," as set forth in plaintiff's affidavit. *Affidavit of Leonard J. Asselin, Jr. Regarding The Seventh–Day Adventist Church,* attached to *Memorandum in Opposition to the Motion to Dismiss For Lack of Jurisdiction by Defendant Seventh–Day Adventist Church* (Doc. # 42) filed April 27, 1995. Accordingly, the motion to quash service of process on the Seventh–Day Adventist Church, a non-existent legal entity, should be sustained.

Perhaps in anticipation of this order, plaintiff seeks to extend the time for service on Midwest, the Mid–America Conference, and the General Conference. That motion is unopposed and the Court finds that it should be sustained.

IT IS THEREFORE ORDERED that *Plaintiff's Motion to File Second Amended Complaint* (Doc. # 30) filed April 11, 1995; and *Plaintiff's Motion to File Supplemental Pleading* (Doc. # 47) filed May 9, 1995, be and hereby are sustained.

IT IS FURTHER ORDERED that the *Motion of Plaintiff, Leonard J. Asselin, Jr. Requesting Leave of the Court To File A Third Amended Complaint Pursuant to FedRCivP 15, and the Court's Permission to Extend the Time for Service Pursuant to FedRCivP 4(m)* (Doc. # 51) filed June 22,

1995, be and hereby is sustained. Plaintiff shall obtain personal service of process upon such defendants by **August 14, 1995.** In obtaining service, plaintiff shall serve this order, along with all pleadings, exhibits, and orders entered in this case.

IT IS FURTHER ORDERED that plaintiff not file the proposed amendments to his First Amended Complaint, but that the foregoing summary of plaintiff's claims shall stand as plaintiff's "second amended complaint" for purposes of further proceedings in this case.

IT IS FURTHER ORDERED that the *Motion of Plaintiff, Leonard J. Asselin, Jr. Requesting Leave of the Court For Possible Intervention by the United States Department of Justice Pursuant to the Americans With Disabilities Act 28 CFR 36.501–36.508* (Doc. # 54) filed June 22, 1995, be and hereby is overruled.

IT IS FURTHER ORDERED that plaintiff's *Motion to Reconsider Defendant Hess' Position Relative to Facts of Service* (Doc. # 53) filed June 22, 1995, be and hereby is overruled.

IT IS FURTHER ORDERED that *Defendant Seventh–Day Adventists Church's Motion to Dismiss for Lack of Jurisdiction* (Doc. # 35) filed April 17, 1995, be and hereby is sustained in part, in that the Court hereby quashes service of process.

IT IS FURTHER ORDERED that *Defendant Shawnee Mission Medical Center, Inc.'s Motion To Dismiss for Lack of Jurisdiction* (Doc. # 15), filed on February 28, 1995; *Defendant Gregory Rick, Jr., M.D.'s Motion to Dismiss* (Doc. # 33), filed April 17, 1995; *Defendant Seventh–Day Adventists Church's Motion to Dismiss for Lack of Jurisdiction* (Doc. # 35), filed April 17, 1995; be and hereby are overruled.

IT IS FURTHER ORDERED that, aside from plaintiff's claims under the Americans With Disabilities Act, all federal claims purportedly pleaded in plaintiff's "second amended complaint" are hereby dismissed for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED that plaintiff show cause in writing on or before August 11, 1995, why all state law claims (for negligence or otherwise) should not be dismissed pursuant to 28 U.S.C. § 1367(c), on the ground that they substantially predominate over the ADA claim over which this Court has original jurisdiction. Defendants on or before August 23, 1995, may file any response or opposition.**

IT IS FURTHER ORDERED that this matter be and hereby is set for a scheduling conference on **August 30, 1995,** at 8:30 a.m. On or before **August 23, 1995,** counsel shall prepare and file their Form 35 Report in the prescribed format.

IT IS FURTHER ORDERED that Shawnee Mission Medical Center, Inc., and Gregory Rick, Jr., M.D., on or before **August 4, 1995,** file their answers to the foregoing "second amended complaint."

IT IS FURTHER ORDERED that except for the pleadings ordered and the action required by this order, all proceedings herein remain stayed.