Carole Ann WENTZ, as Personal Representative of the Estate of Richard K. Wentz, individually and on behalf of all others similarly situated, Plaintiff,

v.

KINDRED HOSPITALS EAST, L.L.C. d/b/a Kindred Hospital Coral Gables, Florida, Defendant.

No. 03–21443–CIV.

United States District Court, S.D. Florida, Miami Division.

Aug. 4, 2004.

Steven K. Hunter, Hunter, Williams & Lynch P.A., Miami, FL, for Plaintiff.

Michael M. Tobin, Michael M. Tobin, P.A., Coral Gables, FL, Co–Counsel for Plaintiff.

Thomas Meeks, Walter J. Taché, Dr. Martin Kalish, Zuckerman Spaeder LLP, Miami, FL, for Defendant.

### ORDER

K. MICHAEL MOORE, District Judge.

**THIS CAUSE** came before the Court upon Defendant Kindred Hospital East L.L.C.'s Motion to Dismiss (**DE # 27**).

**UPON CONSIDERATION** of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order, **GRANTING IN PART AND DENYING IN PART** the Motion to Dismiss,

and **GRANTING** Plaintiff Carole Ann Wentz leave to amend her Amended Class Action Complaint (the "complaint"). (**DE # 26**).

## BACKGROUND

This class action arises out of a billing dispute between the Estate of Richard K. Wentz ("the Estate") and Kindred Hospital in Coral Gables, Florida ("the Hospital"). Plaintiff Carole Ann Wentz, a Maryland resident, is the duly appointed Personal Representative of the Estate. Defendant Kindred Hospital East, L.L.C. ("Kindred"), a Kentucky corporation with its principal place of business in Louisville, Kentucky, owns and operates more than 65 long term care hospitals nationwide, including the Hospital. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332.

In 2002, Richard K. Wentz ("the Decedent") entered the Hospital to be treated for serious injuries sustained as a result of being hit by a car. Plaintiff Carole Ann Wentz signed various intake forms, including a financial agreement (the "Financial Agreement"), on behalf of the Decedent, and provided answers to questions on the Decedent's "Medicare Secondary Payor Questionnaire." Among the questions asked on the "Medicare Secondary Payor Questionnaire" were whether the Decedent was injured due to a non-work related accident and whether another party was responsible for the accident. Kindred claims that Wentz responded "no" to both questions, causing it to seek reimbursement for the Decedent's medical expenses through Medicare.[1]

Shortly after obtaining the Medicare funds, Kindred returned them, asserting a lien on any recovery obtained by the Estate in a personal injury lawsuit against the insured tortfeasor who injured the Decedent. Wentz alleges that Kindred, in asserting its lien, violated the Medicare provisions of the Social Security Act ("Medicare"), 42 U.S.C. § 1395, et seq. (Count II), and breached its "provider agreement" under 42 U.S.C. § 1395cc and the parties' Financial Agreement (Count I). Wentz brings this action on behalf of herself and "all individuals treated at facilities owned or operated by Kindred Hospital East, L.L.C. or its predecessors for injuries for which Kindred and/or its predecessors have received Medicare reimbursement and from whom Kindred seeks to obtain additional monies in excess of the Medicare benefits paid to Kindred." Compl. ¶ 10. Kindred moves to dismiss this action on grounds that: (1) Wentz has no right of action against Kindred and (2) assuming that Wentz has a right of action, her claims are moot because Kindred has returned the Medicare funds.

## DISCUSSION

### I. Motion to Dismiss Standard

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. See *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984). On a motion to dismiss, the Court notes that it must construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. See *SEC v.*

---

1. Kindred claims that Wentz's answers to these questions were false, as the Decedent had been injured in an automobile accident and Wentz had engaged counsel to bring suit against the insured third party responsible for the Decedent's injuries. Mot. to Dismiss at 3. Had Wentz answered the questions truthfully,

Kindred asserts, no Medicare reimbursement would have been sought. Mot. to Dismiss at 4. In essence, Wentz should not benefit from her own false statements, Kindred is entitled to full payment, and Medicare should not have paid where third party recovery was available.

*ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988), *cert. denied sub nom. Peat Marwick Main & Co. v. Tew*, 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988). Consideration of matters beyond the complaint is improper in the context of a motion to dismiss. *See Milburn*, 734 F.2d at 765 (11th Cir.1984).

A court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (citations omitted); *see S. Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 406 (11th Cir.1996). Nonetheless, to withstand a motion to dismiss, it is axiomatic that the complaint must allege facts sufficiently setting forth the essential elements of a cause of action.

## II. An Overview of Relevant Medicare Provisions

Medicare is a federal health insurance program for the elderly and disabled administered by the Centers for Medicare and Medicaid Services ("CMS") under the Department of Health and Human Services ("HHS"). It was first established as a "primary payer for medical services supplied to a beneficiary," regardless of whether other insurance was available. *Zinman v. Shalala*, 67 F.3d 841, 843 (9th Cir.1995). However, in the 1980s, with federal healthcare costs rising, Congress enacted legislation defining Medicare as a "secondary payer" where other sources of payment exist. *United States v. Baxter Int'l Inc.*, 345 F.3d 866, 874 (11th Cir. 2003). As currently codified, Medicare's Secondary Payer provision ("the MSP") provides, in relevant part:

(A) In general
Payment under this subchapter may not be made, except as provided in subparagraph (B), with respect to any item or service to the extent that—... (ii) payment has been made, or reasonably can be expected to be made promptly (as determined in accordance with regulations) under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance.
42 U.S.C. § 1395y(b)(2)(A) (2003).

Subparagraph B of the MSP authorizes the Secretary of HHS (the "Secretary") to make payments for any item or service "if a primary plan described in subparagraph (A)(ii) [2] has not made or cannot reasonably be expected to make payment with respect to such item or service promptly." 42 U.S.C. § 1395y(b)(2)(B)(i). Payments are conditioned upon reimbursement to the Medicare trust fund. *Id.* To recover payment for any item or service, the United States may bring an action, with double damages available, "against any or all entities that are or were required or responsible ... to make payment." 42 U.S.C. 1395y(b)(2)(B)(iii). Additionally, Medicare beneficiaries have a private right of action, with double damages available, if a primary payer "fails to provide for primary payment (or appropriate reimbursement)." 42 U.S.C. § 1395y(b)(3)(A).

The Secretary has set forth regulations implementing Medicare. *See* 42 C.F.R. § 411.20, *et seq.* Under 42 C.F.R. § 411.54, where a Medicare beneficiary has received liability insurance or has a claim pending against a liability insurer, a

**2.** The term "primary plan," as used in the MSP, encompasses a group health plan, or a large group health plan, a workmen's compensation law or plan, an automobile or lia-

bility insurance policy or plan (including a self-insured plan), and no fault insurance. 42 U.S.C. § 1395y(b)(2)(A).

services provider may "place a lien against the beneficiary's liability settlement for Medicare covered services, rather than bill only Medicare for Medicare covered services" if the liability insurer pays within 120 days after the earlier of:

(A) The date the provider or supplier files a claim with the insurer or places a lien against a potential liability settlement.

(B) The date the services were provided or, in the case of inpatient hospital services, the date of discharge.

42 C.F.R. § 411.54(i) (2003).

If the liability insurer fails to pay within the 120 day period, the provider must withdraw its lien and "may only bill Medicare for Medicare covered services." 42 C.F.R. § 411.54(ii).

### III. Wentz Has No Implied Right of Action Under 42 U.S.C. § 1395cc

In Count II of the complaint, Wentz seeks declaratory, injunctive, and other relief based on Kindred's alleged practice of asserting liens against patients' potential recoveries after receiving Medicare benefits. Wentz alleges that Kindred's actions violate 42 U.S.C. § 1395cc(a)(1)(A). Medicare's "prohibition against balance billing." Complt. ¶ 11(c). Kindred moves to dismiss the complaint on grounds that Wentz lacks a right of action under § 1395cc.

■■■ Because § 1395cc contains no express right of action, the Court must determine whether a right is implied. Whether a statute implies a private right of action is a "question of statutory construction." *Cannon v. Univ. of Chi.*, 441 U.S. 677, 688, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval,* 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001); *see also Love v. Delta*

*Air Lines,* 310 F.3d 1347, 1351–52 (11th Cir.2002) (finding that the Supreme Court has made legislative intent "*the* touchstone of its analysis") (emphasis in original).

This inquiry entails, first and foremost, an examination of the statutory text for "rights-creating · language." *Love,* 310 F.3d at 1352 (quoting *Sandoval,* 532 U.S. at 288, 121 S.Ct. 1511) (internal quotations omitted). · "Rights-creating language" is language "explicitly confer[ring] a right directly on a class of persons that include[s] the plaintiff in [a] case," *Id.* (quoting *Cannon,* 441 U.S. at 690 n. 13, 99 S.Ct. 1946), or language identifying "the class for whose especial benefit the statute was enacted." *Id.* (quoting *Tex. & Pac. Ry. Co. v. Rigsby,* 241 U.S. 33, 39, 36 S.Ct. 482, 60 L.Ed. 874 (1916)). In the. absence of "rights-creating language," courts rarely "impute to Congress an intent to create a private right of action." *Gonzaga Univ. v. Doe,* 536 U.S. 273, 284 n. 3, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002).

■■■ However, statutory language, by itself, is not necessarily dispositive. In determining legislative intent, courts should also consider statutory structure. *Love,* 310 F.3d at 1353. A statute's enforcement scheme, for example, may militate against implying a right of action. *Sandoval,* 532 U.S. at 290, 121 S.Ct. 1511 ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."). Courts may further examine legislative history "if—and *only* if—statutory text and structure have not conclusively resolved whether a private right of action should be implied." *Love,* 310 F.3d at 1353 (emphasis in original). Finally, courts should be mindful that regulations promulgated to interpret and enforce a statutory provision cannot themselves create a private right or remedy. *Sandoval,* 532 U.S. at 291, 121 S.Ct. 1511 ("Language

in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not.").

■ Here, the relevant statutory language provides no basis for implying a right of action. Section 1395cc(a)(1)(A) reads, in relevant part:

(a)(1) Any provider of services ... shall be qualified to participate under this subchapter and shall be eligible for payments under this subchapter if it files with the Secretary an agreement—

(A) not to charge ... any individual or any other person for items or services for which such individual is entitled to have payment made under this subchapter ...

42 U.S.C. § 1395cc(a)(1)(A) (2003).

While Wentz, as Personal Representative of the Decedent's Estate, is an intended beneficiary under 42 U.S.C. § 1395cc(a)(1)(A), this alone is insufficient to imply a private right of action. *Care Choices HMO v. Engstrom,* 330 F.3d 786, 789 (6th Cir.2003) (finding no implied right of action for Health Management Organizations under 42 U.S.C. § 1395mm(e)(4) though they were the intended beneficiaries under that provision). The language

focuses on the entity regulated rather than the individuals protected, and therefore creates "no implication of an intent to confer rights on a particular class of persons." *Sandoval,* 532 U.S. at 289, 121 S.Ct. 1511 (quoting *Cal. v. Sierra Club,* 451 U.S. 287, 294, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981)).

An enforcement scheme within Medicare's statutory and regulatory structure further belies any legislative intent to create a private right of action under section 1395cc. Upon determining that a provider "fails to comply substantially" with a provider agreement, the Secretary may refuse to enter into a provider agreement or, upon reasonable notice, may terminate or refuse to renew a provider agreement. 42 U.S.C. § 1395cc(b)(2)(A). Additionally, individuals wrongfully charged for items or services covered by Medicare have an administrative remedy under the regulations implementing § 1395cc. *See* 42 C.F.R. § 489.1, *et seq.* If a provider makes an incorrect collection [3] *and* fails to refund or set aside the amount incorrectly collected, the amount "may be offset against amounts otherwise due the provider." 42 C.F.R. § 489.41 (2003).[4] Once the amounts are offset, CMS may decide to pay the beneficiary "or other person from

3. "Incorrect collections" are "any amounts from a beneficiary (or someone on his or her behalf) that are not authorized under Subpart C of this part." 42 C.F.R. § 489.40(a). Further, "[a] payment properly made to a provider by an individual not considered entitled to Medicare benefits will be deemed to be an 'incorrect collection' when the individual is found to be retroactively entitled to benefits." 42 C.F.R. § 489.40(b).

4. 42 C.F.R. § 489.41, the regulation governing the timing and methods of handling incorrect collections, provides:

(a) Refund. Prompt refund to the beneficiary or other person is the preferred method of handling incorrect collections.

(b) Setting Aside. If the provider cannot refund within 60 days from the date on the

notice of incorrect collection, it must set aside an amount equal to the amount incorrectly collected, in a separate account identified as to the individual to whom payment is due. This amount incorrectly collected must be carried on the provider's records in this matter until final disposition is made in accordance with the applicable State law.

(c) Notice to, and action by, intermediary

(1) The provider must notify the intermediary of the refund or setting aside required under paragraphs (a) and (b) of this subsection.

(2) If the provider fails to refund or set aside the required amounts, they must be offset against amounts otherwise due the provider.

42 C.F.R. § 489.41.

whom the provider received the incorrect collection" if it finds that: (1) the provider has failed, following written request, to refund the amount incorrectly collected to the beneficiary or other person, and (2) the provider agreement has been terminated. 42 C.F.R. § 489.42 (2003).[5] This administrative enforcement regime strongly suggests the absence of a private right of action to enforce provider agreements. *Love,* 310 F.3d at 1357 ("The explicit provision of ... collaborate enforcement mechanisms strongly undermines the suggestion that Congress also intended to create by implication a private right of action in a federal district court but declined to say so expressly."); *see also Sandoval,* 532 U.S. at 290, 121 S.Ct. 1511. It is thus patent from the text and structure of § 1395cc that it contains no implied private right of action.[6]

Wentz's reliance on *Evanston Hosp. v. Hauck,* 1 F.3d 540 (7th Cir.1993), *Holle v. Moline Pub. Hosp.,* 598 F.Supp. 1017 (C.D.Ill.1984), and *Rybicki v. Hartley,* 1985 WL 56554 (D.N.H.), *aff'd,* 792 F.2d 260 (1st Cir.1986) is misplaced. *Evanston,* a case in which a hospital sued a state agency to reimburse Medicaid funds and collect from a former patient, is clearly inapposite. Moreover, while *Holle* and

*Rybicki* are factually similar to the case *sub judice,* neither specifically addresses the issue of whether a right of action is implied under § 1395cc. In any event, *Holle* and *Rybicki* do not impact the Court's decision as both cases antecede the Supreme Court's current approach towards implied rights of action annunciated in *Sandoval.*

Accordingly, Wentz has no right of action under § 1395cc, and Kindred's Motion to Dismiss (**DE # 27**) is **GRANTED** as to **COUNT II** of Wentz's Complaint.

## IV. Wentz Asserts a Valid Claim for Breach of the Financial Agreement

In Count I of the complaint, Wentz seeks relief based on Kindred's alleged breach of both its provider agreement under § 1395cc and the parties' Financial Agreement.[7] Kindred asserts that Wentz's contract claim amounts to nothing more than an attempt to "detour around the entire body of federal law on private rights of action." Mot. to Dismiss at 15. To the extent that Wentz seeks to enforce Kindred's provider agreement with the Secretary, the Court agrees. *See Davis v. United Air Lines, Inc.,* 575 F.Supp. 677, 680 (E.D.N.Y.1983) (finding that a private

---

5. Before determining whether to pay a beneficiary or other person, CMS must give written notice to the provider "(1) explaining that an incorrect collection was made and the amount; (2) requesting the provider to refund the incorrect collection to the beneficiary or other person; and (3) advising of CMS's intention" to determine whether to pay the beneficiary or other person. 42 C.F.R. § 489.42(b). The provider will have an opportunity to respond within 20 days from the date of the notice, and "CMS will consider any written statement or evidence in making a determination." 42 C.F.R. § 489.42(c).

6. Because the text and structure of § 1395cc are dispositive, it is unnecessary to delve into legislative history. *See Sandoval,* 532 U.S. at 288, 121 S.Ct. 1511 ("In determining whether

statutes create private rights of action ... legal context matters only to the extent it clarifies text.")

7. The Financial Agreement provides:

The undersigned agrees, whether he/she signs as an agent or as a patient, that in consideration of the services to be rendered to the patient, the patient is hereby obligated to pay the account of the hospital in accordance with the regular rates and terms of the hospital. Should the account be referred to an attorney or collection agency for collection, the patient shall pay actual attorney's fees and collection expenses. All delinquent accounts shall bear interest at the legal rate.
Mot. to Dismiss, ex. B(1).

action to enforce a contract between the plaintiff's employer and the federal government under section 503 of the Rehabilitation Act "would be as inconsistent with the underlying purpose of the legislative scheme and would interfere with the implementation of that scheme to the same extent as would a cause of action under the statute.") (internal quotations omitted).

However, the Court rejects Kindred's contention that the absence of an implied right of action under § 1395cc bars Wentz from enforcing the Financial Agreement, Wentz posits that the parties entered an agreement whereby Kindred agreed to "render appropriate care and treatment in return for reasonable and lawful charges for that treatment." Compl. ¶ 13. Wentz further asserts that Kindred's hospital lien constitutes an unlawful charge, and therefore a breach of the parties' agreement. Compl. ¶¶ 14–15. Because this claim does not arise under § 1395cc, it need not be dismissed at this time. The Court notes, however, that Wentz will not prevail on this claim should the Court find that her own actions rendered Kindred's lien unlawful.[8]

Accordingly, Kindred's Motion to Dismiss (**DE # 27**) is **GRANTED IN PART** as to **COUNT I** of Wentz's complaint.

## V. Wentz's Claim for Breach of the Financial Agreement is Not Moot

As an alternative grounds for dismissal, Kindred contends that the Court lacks jurisdiction to decide the case because Wentz's claims are moot. By returning the Medicare funds that it received prior to asserting its hospital lien, Kindred ar-

gues, it removed "the condition which made its hospital lien objectionable," thus rendering Wentz's claims moot. Mot. to Dismiss at 20.

Article III of the United States Constitution limits the jurisdiction of federal courts to actual cases or controversies. U.S. Const. art. III, § 2, cl. 1. The doctrine of mootness "derive[s] from this limitation because an action that is moot cannot be characterized as an active case or controversy." *Adler v. Duval County Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir.1997). "A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Id.* (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)) (internal quotations omitted). Where "events subsequent to the commencement of a lawsuit create a situation where the court can no longer give the plaintiff meaningful relief," the case is moot and should be dismissed. *Jews for Jesus, Inc. v. Hillsborough County Aviation Auth.*, 162 F.3d 627, 629 (11th Cir. 1998).

Wentz's sole remaining claim—a contract claim based on the parties' Financial Agreement—is not moot by virtue of Kindred's refund of Medicare benefits. Wentz alleges that Kindred breached its agreement to "render appropriate care and treatment in return for reasonable and lawful charges for that treatment" by asserting its lien. Compl. ¶¶ 13–15. Assuming that Kindred unlawfully asserted its lien, Kindred's refund of previously obtained Medicare benefits does not negate the lien's unlawfulness.[9] Thus, Kindred's

---

8. There appears to be substantial evidence to support Kindred's contention that Wentz caused Kindred to bill Medicare mistakenly by providing false answers to questions on the Medicare Secondary Payor Questionnaire. *See, e.g.*, Aff. of Orlando Perez, Mot. to Dismiss, ex. A.

9. The maintenance of a hospital lien against the proceeds of a liability insurance settlement would be unlawful if the liability insurer could not "reasonably be expected to pay promptly." 42 U.S.C. § 1395y(b)(2)(A); *see also* 42 C.F.R. 411.54.

actions following the commencement of this lawsuit have not affected the Court's ability to grant the plaintiff meaningful relief. The Court rejects Kindred's alternative grounds for dismissal.

## CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1) Kindred's Motion to Dismiss (**DE # 27**) is **GRANTED** as to Count II of the complaint.

2) Kindred's Motion to Dismiss (**DE # 27**) is **GRANTED IN PART** as to Count I of the complaint. Wentz's contract claim is dismissed only to the extent that it is based on Kindred's provider agreement pursuant to 42 U.S.C. § 1395cc.

3) Plaintiff Wentz is **GRANTED LEAVE TO AMEND** its complaint. Wentz shall file an Amended Complaint within eleven (11) days from the date of this Order.