UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Steven Dominic**

Case No. 20-cv-448-PB

v.

Opinion No. 2021 DNH 053

**Concord Hospital, Inc. et al.**

## MEMORANDUM AND ORDER

Steven Dominic claims that his deceased mother Elaine was the victim of a conspiracy to violate her civil rights and deprive her of needed medical care. Acting on behalf of the estate, Steven has sued Elaine's former attorney, the attorney's current and former law firms, and the hospital that treated her. Construed generously, the complaint asserts federal claims for conspiracy, in violation of 42 U.S.C § 1985(3), a Medicare claim under Title XVIII of the Social Security Act, in violation of 42 U.S.C. § 1395cc(a)(1)(F), and state law claims for conspiracy, medical malpractice, wrongful death, fraudulent concealment, false statements, and unjust enrichment. The named defendants have moved to dismiss the complaint in its entirety. For the following reasons, I dismiss Dominic's federal claims with prejudice and decline to exercise supplemental jurisdiction over his state law claims.

## I. BACKGROUND

Elaine Dominic died on November 8, 2016. Compl. ¶ 74. For several years prior to her death, Steven's older brother Reginald lived with her at her home in Boscawen and cared for her physical and mental health needs. Compl. ¶¶ 13, 14.

In 2010, Elaine failed a mental status exam during an appointment at Concord Hospital. Compl. ¶ 26. APRN Una Folan, a Concord Hospital employee, responded by recommending that Elaine seek an evaluation and treatment by a neurologist. Compl. ¶ 27. Because Elaine did not have a durable power of attorney for health care ("POA") on file with the hospital and her advance directives were "Full Code," meaning that all interventions needed to restore her breathing or heart function were permitted, Folan also suggested that Elaine consider a POA to cover her future medical decisions and her wishes for her final days. Compl. ¶¶ 21, 27.

Approximately a year later, Reginald hired Attorney Stephen Goldman of Goldman & LeBrun Attorneys at Law to represent Elaine. Compl. ¶ 44. Reginald and Goldman then arranged for Elaine to undergo a general health exam at Concord Hospital. Compl. ¶ 50. Following the exam, Elaine was diagnosed with Alzheimer's disease and severe dementia. Compl. ¶ 55. This prompted Folan to refer Elaine to a neurologist or a geriatric

2

psychiatrist and caused her to again suggest that Elaine consider a POA.  Compl. ¶ 55.

Goldman notified Elaine via letter on July 22, 2011 that he had concluded after speaking with Folan that he did not believe that Elaine was able to sign any deeds, wills, or powers of attorney.  Compl. ¶ 71.  He also recommended that Elaine seek treatment with a neurologist or psychiatrist to help with her dementia.  Compl. ¶ 71.

On May 25, 2012, Reginald again contacted Goldman and told him that a judge in Franklin, New Hampshire had informed him that Elaine needed help and she should sign a power of attorney, guardianship, or conservatorship.  Compl. ¶ 75.  The following week, Reginald and Elaine met with Goldman at his office.  Compl. ¶ 76.  Steven alleges that Reginald and Goldman pushed and threatened Elaine to sign a POA during the meeting.  Compl. ¶ 77.  On June 8, 2012, Elaine hesitated but ultimately signed a POA with an advance directive of "zero code."  Compl. ¶¶ 76, 79.

On April 3, 2013, Elaine visited Concord Hospital and was treated by Dr. Tracy A. Ohara, who discussed Elaine's code status with Reginald.  Compl. ¶ 107.  Dr. Ohara noted that Elaine's status at the hospital was "full code," but that Reginald should consult his brother Gary and Dr. Niegisch due to Elaine's Alzheimer Disease.  Compl. ¶ 107.

3

On August 16, 2016, Dr. Peter Gayed of Concord Hospital treated Elaine and noted her history of advanced dementia, multiple falls, urinary tract infections, and pneumonia and admitted her to the hospital. Compl. ¶ 121. Elaine was discharged three days later and was transferred to a nursing home. Compl. ¶ 122. On September 26, 2016, Reginald informed the nursing home that he could not afford for Elaine to remain in its care. Compl. ¶ 123. He then took her home where she died less than 45 days later. Compl. ¶ 124.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In testing a complaint's sufficiency, I employ a two-step approach. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). First, I screen the complaint for statements that "merely offer legal conclusions couched as fact

4

or threadbare recitals of the elements of a cause of action." Id. (internal quotation marks and alterations omitted). A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed. Id. Second, I credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then determine if the claim is plausible. Id. The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct. Twombly, 550 U.S. at 556. The "make-or-break standard" is that those allegations and inferences, "taken as true, must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

### III.  ANALYSIS

Defendants contend that Steven's complaint must be dismissed because his two federal claims are fatally flawed and the court should decline to exercise supplemental jurisdiction over his state law claims. I assess this argument by examining each federal claim in turn and then considering whether to retain supplemental jurisdiction over Steven's state law claims.

#### A.  § 1985(3) Conspiracy Claim

"[A] section 1985(3) claim must contain four elements: 'First, the plaintiff must allege a conspiracy; second, [s]he

5

must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, [s]he must identify an overt act in furtherance of the conspiracy; and finally, [s]he must show either injury to person or property, or a deprivation of a constitutionally protected right.'" Parker v. Landry, 935 F.3d 9, 17-18 (1st Cir. 2019) (quoting Pérez-Sánchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008)). "It has long been established that a claim under § 1985(3) requires 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" Pérez-Sánchez, 531 F.3d at 107 (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)); see also Aulson v. Blanchard, 83 F.3d 1, 4 (1st Cir. 1996) ("We have previously interpreted the Griffin gloss to denote that plaintiffs must allege facts showing that (1) the defendants conspired against them because of their membership in a class, and (2) the criteria defining the class are invidious.").

Here, Steven alleges that Elaine was a member of a class of people who lack mental capacity, as defined by § 12102 of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102. The First Circuit has held, however, that § 1985(3) does not provide a remedy for ADA violations. D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 44 (1st Cir. 2012); see also Bartell v. Lohiser, 215 F.3d 550, 560 (6th Cir. 2000) (plaintiff's "claim

6

that Defendants discriminated against her on account of her mental disabilities . . . is not actionable."); D'Amato v. Wis. Gas Co., 760 F.2d 1474, 1485-87 (7th Cir. 1985) ("The handicapped as a class differ radically from the racially-based animus motivating the Ku Klux Klan and white supremacists against which Congress directed Section 1985(3)."); Wilhelm v. Cont'l Title Co., 720 F.2d 1173, 1177 (10th Cir. 1983) ("We must conclude that a class of 'handicapped persons' was not in the contemplation of Congress in 1871, and was not included as a class in what is now § 1985(3)."); but cf. Lake v. Arnold, 112 F.3d 682, 685-88 (3d Cir. 1997) (given that "the reach of section 1985(3) is not fixed at any given point in time, we cannot conclude, in light of these statements by Congress and research compiled by academicians, that the mentally retarded are excluded from section 1985(3) protection."). Because Steven's § 1985(3) claim is based upon a non-cognizable class for the purposes of § 1985(3), it must be dismissed.

**B. § 1395cc Claim**

Section 1395cc specifies that service providers must enter into a contract with the Secretary of the Department of Health and Human Services to receive payments from Medicare. When a hospital enters into this contract, it must agree to contract with a professional standards review organization to review the adequacy and quality of the care provided by the hospital. 42

U.S.C. § 1395cc(a)(1)(F)(i).  Steven argues that Concord Hospital is liable for damages under § 1395cc because its professional standards review contract was substandard and caused Elaine to receive inadequate medical care.

As the hospital correctly argues, this claim fails because § 1395cc does not give rise to either an express or an implied private right of action for damages.  See e.g., Massey v. Health First, Inc., No. 605CV480ORL31DAB, 2005 WL 1243772, at *2 (M.D. Fla. May 25, 2005) ("This Court finds the analysis in Wentz persuasive and concludes that Section 1395cc does not create an express or implied right of action."); Ratmansky ex rel. Ratmansky v. Plymouth House Nursing Home, Inc., No. Civ.A. 05-0610, 2005 WL 770628, at *3 (E.D. Pa. Apr. 5, 2005) ("[T]he Eastern District of Pennsylvania has not recognized an implied right of action under the Social Security Act."); Wentz v. Kindred Hospitals East, L.L.C., 333 F. Supp. 2d 1298, 1301-03 (S.D. Fla. 2004) (extended analysis of private right of action under § 1395cc, concluding that no private right of action exists under the statute); Olsen v. Quality Continuum Hospice, Inc., 380 F.Supp.2d 1225, 1230 (D.N.M. 2004) ("[T]he Social Security Act of 1965 does not provide for any private right of action for a patient to seek redress against a provider for allegedly improper medical treatment."); Asselin v. Shawnee Mission Med. Ctr., Inc., 894 F.Supp. 1479, 1485 (D. Kan. 1995)

8

("[T]he Court held that 42 U.S.C. § 1395cc(f)(1)(A) and § 1395cc(f)(2)(A) . . . do not afford plaintiff a private cause of action."). Accordingly, I dismiss Steven's § 1395cc claim.

### C. State Law Claims

"When the parties to a federal lawsuit have citizens of the same state on both sides, and the court has dismissed all of the federal claims, the court generally should dismiss, without prejudice, pendent state law claims for lack of subject matter jurisdiction." Ginsberg v. DeHart, No. 1:10-cv-00452, 2011 WL 1100989, at *2 (D.N.H. Mar. 22, 2011) (citing Lares Grp. II v. Tobin, 221 F.3d 41, 45 (1st Cir. 2000)).

I do not have diversity of citizenship jurisdiction over Steven's state law claims because all of the parties are New Hampshire residents. Further, because this case is in its early stages, I decline to exercise my discretion to retain supplemental jurisdiction over the state law claims. Accordingly, these claims are dismissed without prejudice to Steven's right to refile them in state court.

### IV. CONCLUSION

For the foregoing reasons, defendants' motions to dismiss (Doc. Nos. 12, 14, 15) are granted. All federal claims are dismissed with prejudice and all state claims are dismissed without prejudice to Steven's right to renew his claims in state court. Steven's motion to amend the complaint (Doc. No. 26) is

9

denied because it does not cure the deficiencies I have identified in this Memorandum and Order.  I direct the clerk of court to enter judgment and close the case.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

March 17, 2021

cc:  Steve Dominic, pro se
     Melissa M. Hanlon, Esq.
     Marrielle B. Van Rossum, Esq.
     Simon R. Brown, Esq.
     Edwin F. Landers, Jr., Esq.
     Linda M. Smith, Esq.